UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

| | |
|---|---|
| 162 D & Y CORP., OPEN KARAOKE CORP.,<br>MUSICBOX KTV INC., SAGWA NAMOO INC.,<br>DONG HYUN HA, JIN HYUN RYU, ANTHONY KIM,<br>KYUNG SOON NAM, BOOMERANG TWO CORP.,<br>DAON NY INC., KANG SAN DEUL CORP., | Case No.: |
| VECHE 7 ENTERTAINMENT INC., NEW SIMPLY Q INC.,<br>NEW MI GOONG CORP., BEST 164 INC., HAE GUNG INC.,<br>PARK & J ENTERPRISE CORP., YONG SUK KO<br>EUNHEE CHO, YOORA CHO, DAEHWANG KIM,<br>SHANZI CHE, JIN KIM, KYU SOON YANG,<br>MEIHUA LI, MI SUK CHO, and | **COMPLAINT** |
| KOREAN ENTERTAINMENT ASSOCIATION USA INC., | **Jury Trial Demanded** |

Plaintiffs,

-against-

ELOHIM EPF USA, INC., CHONG YUN CHA
a/k/a DAVID CHA, and NAM HYUN YOO,

Defendants.
------------------------------------------------------------------------x

Plaintiffs, 162 D & Y CORP., OPEN KARAOKE CORP., MUSICBOX KTV INC.,

SAGWA NAMOO INC., DONG HYUN HA, JIN HYUN RYU, ANTHONY KIM, KYUNG

SOON NAM (hereinafter, collectively referred to as the "**SDNY Action Plaintiffs**"),

BOOMERANG TWO CORP., DAON NY INC., KANG SAN DEUL CORP., VECHE 7

ENTERTAINMENT INC., NEW SIMPLY Q INC., NEW MI GOONG CORP., BEST 164 INC.,

HAE GUNG INC., PARK & J ENTERPRISE CORP., YONG SUK KO, EUNHEE CHO, YOORA

CHO, DAEHWANG KIM, SHANZI CHE, JIN KIM, KYU SOON YANG, MEIHUA LI, MI SUK

CHO (hereinafter, collectively referred to as the "**Non-SDNY Action Plaintiffs**"), and KOREAN

ENTERTAINMENT ASSOCIATION USA INC. (hereinafter referred to as the "**Association**")

(together with the SDNY Action Plaintiffs and the Non-SDNY Action Plaintiffs, hereinafter,

collectively referred to as "**Plaintiffs**"), by and through their attorneys, AHNE & JI, LLP, as and

for their Complaint against the Defendants, ELOHIM EPF USA, INC. (hereinafter referred to as "**Elohim**" or the "**Enterprise**," as defined below), CHONG YUN CHA a/k/a DAVID CHA (hereinafter referred to as "**Defendant Cha**"), and NAM HYUN YOO (hereinafter referred to as "**Defendant Yoo**") (together with Defendant Cha, hereinafter, collectively referred to as the "**RICO Defendants**," as defined below).

## NATURE OF THE ACTION

1.     This case involves the systematic and repeated scheme in which the RICO Defendants attempted to intimidate, and did intimidate, karaoke establishments and their owners in essentially a "shakedown" effort, in common parlance, to bully them into paying Elohim money to which Elohim was never entitled.

2.     Based on the RICO Defendants' intentional misrepresentation that Elohim owned exclusive copyright to certain famous Korean songs when it did not, the RICO Defendants sought to intimidate Plaintiffs with dunning letters, phone calls, personal visits, and threats of litigation, telling Plaintiffs not to listen to their attorneys and that it would be more expensive for them to dispute Elohim's ownership of exclusive copyright than they would be to pay the purported copyright licensing fees to Elohim.

3.     The RICO Defendants not only intimidated Plaintiffs with dunning letters, phone calls, personal visits, and threats of litigation, but also, using Elohim as a "vehicle," filed fraudulent claims premised upon the 18 Dismissed Songs to which Elohim never owned exclusive copyright in the U.S. District Court for the Central District of California (the "California Action"), U.S. District Court for the Southern District of New York (the "SDNY Action"), and the U.S. District Court for the District of New Jersey (the "NJ Action"), fraudulently claiming that it owned exclusive copyright to the 18 Dismissed Songs to which Elohim in fact never owned such rights.

4.     The RICO Defendants executed, and still execute, a multi-faceted, extortionate scheme that has included not only intimidating of Plaintiffs and manufacturing causes of action and evidence, but also bringing a series of fraudulent lawsuits in various U.S. District Courts in California, New York, and New Jersey and making false statements to U.S. Courts and the media, all for the purpose of coercing Plaintiffs into paying the money to which Elohim was not entitled.

5.     The RICO Defendants, by their own admissions, personally visited the SDNY Action Plaintiffs' karaoke establishments, and conducted stealth, vigilante operations by posing as patrons in an attempt to manufacture causes of action and evidence by engaging in purported public performances of the songs to which Elohim never owned exclusive copyright.

6.     The RICO Defendants not only made false and misleading statements to the U.S. District Court for the Southern District of New York, but also submitted manufactured evidence, such as the photographs that they took at the SDNY Action Plaintiffs' karaoke establishments, in support of Elohim's manufactured causes of action in the SDNY Action.

7.     The RICO Defendants' common objective was to extort money from Plaintiffs through threats of expensive and frivolous litigation in order to get a quick settlement, using Elohim as a "vehicle," for their own financial benefits.

8.     As a direct, proximate, and reasonably foreseeable result of the RICO Defendants' fraudulent, deceptive, and extortionate activities, Plaintiffs have suffered, and continue to suffer, damages in their business or property.

9.     Plaintiffs thus bring the instant action, asserting claims based upon the RICO Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1964(c), 1962(c), and 1962(d); fraudulent misrepresentation; and aiding and abetting

fraud, and seek compensatory, punitive, and treble damages together with equitable and injunctive relief as well as attorneys' fees and expenses.

## PARTIES

10.     Plaintiff 162 D & Y Corp. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**Flower Karaoke**" in Flushing, New York.

11.     Plaintiff Open Karaoke Corp. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**Open Karaoke**" in Flushing, New York.

12.     Plaintiff Music Box KTV Inc. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**Musicbox KTV**" in Flushing, New York.

13.     Plaintiff Sagwa Namoo Inc. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**Sagwa Namoo**" in Flushing, New York.

14.     Plaintiff Boomerang Two Corp. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**Boomerang**" in Flushing, New York.

15.     Plaintiff Daon NY Inc. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**Tomato**" in Flushing, New York.

16.     Plaintiff Kang San Deul Corp. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**Tambourine**" in Flushing, New York.

17.     Plaintiff Veche 7 Entertainment Inc. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**Versace**" in Flushing, New York.

18.     Plaintiff New Simply Q Inc. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**Waba**" in Flushing, New York.

19.     Plaintiff New Mi Goong Corp. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**All In**" in Flushing, New York.

20.     Plaintiff Best 164 Inc. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**Okay**" in Flushing, New York.

21.     Plaintiff Hae Gung Inc. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**Hae Gung**" in Flushing, New York.

22.     Plaintiff Park & J Enterprise Corp. was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York doing business as "**Eelang**" in Flushing, New York.

23.     Plaintiff Dong Hyun Ha is an individual residing in Queens County, New York, and he is the principal owner of Flower Karaoke.

24.     Plaintiff Jin Hyun Ryu is an individual residing in Queens County, New York, and he is the principal owner of Open Karaoke.

25.     Plaintiff Anthony Kim is an individual residing in Queens County, New York, and he is the principal owner of Musicbox KTV.

26.     Plaintiff Kyung Soon Nam is an individual residing in Queens County, New York, and she is the principal owner of Sagwa Namoo.

27.     Plaintiff Yong Suk Ko is an individual residing in Queens County, New York, and he is the principal owner of Boomerang.

28.     Plaintiff Eunhee Cho is an individual residing in Queens County, New York, and she is the principal owner of Tomato.

29.     Plaintiff Yoora Cho is an individual residing in Queens County, New York, and she is the principal owner of Tambourine.

30.     Plaintiff Daehwang Kim is an individual residing in Queens County, New York, and he is the principal owner of Versace.

31.     Plaintiff Shanzi Che is an individual residing in Queens County, New York, and she is the principal owner of Waba.

32.     Plaintiff Jin Kim is an individual residing in Queens County, New York, and she is the principal owner of All In.

33.     Plaintiff Kyu Soon Yang is an individual residing in Queens County, New York, and she is the principal owner of Okay.

34.     Plaintiff Meihua Li is an individual residing in Queens County, New York, and she is the principal owner of Hae Gung.

35.     Plaintiff Mi Suk Cho is an individual residing in Queens County, New York, and she is the principal owner of Eelang.

36.     Defendant Elohim EPF USA Inc. was and still is a corporation organized and existing under and by virtue of the laws of the State of California.

37.     Elohim was formed on September 13, 2013.

38.     Elohim claimed, and still claims, to be a United States sub-publisher for a substantial number of music publishers in the Republic of Korea.

39.     Elohim claimed, and still claims, to control the right to license musical compositions for those publishers in the United States.

40.     Elohim claimed, and still claims, to own exclusive copyright ownership to thousands of Korean songs in the United States.

41.     Defendant Chong Yun Cha a/k/a David Cha is an individual residing in Helendale, California.

42.     Defendant Cha was and still is the Chairman and CEO of Elohim.

43.     On February 27, 2018 and February 28, 2018, Defendant Cha personally visited the karaoke establishments of the SDNY Action Plaintiffs, with Defendant Yoo, to take photographs of television monitor depicting lyrics and song title of the songs to which Elohim claimed exclusive copyright in order to manufacture causes of action and evidence premised upon the 18 Dismissed Songs, as hereinafter defined.

44.     Defendant Cha, in his written Declaration sworn to under penalty of perjury, dated January 18, 2023, testified that he revisited these establishments in July 2019 to determine whether the 25 claimed songs were still playable on the SDNY Action Plaintiffs' karaoke machines.

45.     Defendant Nam Hyun Yoo is an individual residing in Queens County, New York.

46.     Defendant Yoo was and still is the CEO of Elohim for the Eastern United States Operation.

47.     Defendant Yoo, during his sworn trial testimony on July 14, 2023, testified that he visited almost all the karaoke establishments in New York.

48.     Defendant Yoo personally visited the karaoke establishments of the SDNY Action Plaintiffs, with Defendant Cha, on February 27, 2018 and February 28, 2018 to take photographs of television monitor depicting lyrics and song title of the songs to which Elohim claimed exclusive copyright in order to manufacture causes of action and evidence premised upon the 18 Dismissed Songs, as hereinafter defined.

## SUBJECT MATTER JURISDICTION AND VENUE

49.     This Court has subject matter jurisdiction over this action because it arises under the laws of the United States, 28 U.S.C. §§ 1331, 1337, and 1343, and more particularly, the instant action arises under an Act of Congress, namely, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c).

50.     This Court has supplemental jurisdiction over Plaintiffs' claims brought under the laws of the State of New York pursuant to 28 U.S.C. § 1367, as they arise from the common nucleus of operative facts.

51.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events set forth in this Complaint occurred within this District.

## PERSONAL JURISDICTION

52.     Exercise of jurisdiction over Defendant Cha is proper pursuant to 18 U.S.C. § 1965(b) and NY CPLR § 302.  Defendant Cha has transacted business and engaged in tortious conduct in the State of New York, which gives rise in part to Plaintiffs' claims.  Among other things,

Defendant Cha: a) sent, or caused to be sent, numerous letters, containing false and misleading information, from March 23, 2017 to December 20, 2024, under the name of Elohim, demanding copyright licensing fees and threatening litigation, to Plaintiffs and other various karaoke establishments in Queens and Manhattan, New York; b) traveled to New York to meet with Defendant Yoo to orchestrate campaigns to extort money from Plaintiffs and other various karaoke establishments in New York; c) personally visited the SDNY Action Plaintiffs' karaoke establishments in order to manufacture causes of action and evidence in connection with the 18 Dismissed Songs; d) brought fraudulent claims premised upon the 18 Dismissed Songs; e) continued to press the fraudulent claims premised upon the 18 Dismissed Songs in the SDNY Action for over 4 years; f) submitted multiple false and misleading statements to U.S. Court; g) falsely testified that Elohim owned exclusive copyright to the 18 Dismissed Songs when in fact it did not; h) filed, or caused to be filed, multiple Declarations sworn to under penalty of perjury containing false and misleading statements with U.S. Court; i) filed, or caused to be filed, multiple manufactured evidence in support of the fraudulent claims premised upon the 18 Dismissed Songs with U.S. Court; and j) made fraudulent public announcement through radio channel, called AM 1660, representing that Elohim owned exclusive copyright to thousands of songs, all in an effort to extort money from Plaintiffs and other various karaoke establishments in Queens and Manhattan, New York. Defendant Cha further engaged in intentional, wrongful, illegal, and/or tortious acts that he knew and intended would be felt in New York. For instance, Defendant Cha directed a multitude of phone calls, emails, and other forms of communication to Defendant Yoo, who was and still is located in New York, and participated in, and orchestrated, campaigns in New York, since March 2017 until the present, by directing Defendant Yoo to make personal visits to each and every karaoke establishments in New York for the purpose of extorting money from Plaintiffs.

Also, as set forth below in more detail, Defendant Cha and Defendant Yoo together have engaged in intentional, wrongful, illegal, and/or tortious acts in New York.  In fact, Defendant Cha, under the name of Elohim, has been collecting copyright licensing fees on a monthly basis from multiple karaoke establishments located in Flushing, New York and on West 32nd Street in Korea Town, Manhattan, New York.  Defendant Cha was aware of the effects in New York of those acts, the activities of Defendant Cha and Defendant Yoo were to directly benefit themselves, Defendant Yoo was working at the direction, under the control, at the request, and/or on behalf of Defendant Cha in committing those acts.  Defendant Cha, through his activities in New York, has served as the ringleader and mastermind in the Enterprise to defraud and extort money from Plaintiffs and other various karaoke establishments, working closely with Defendant Yoo.  Defendant Cha intentionally targeted Plaintiffs and other karaoke establishments in New York.

53.    Exercise of jurisdiction over Defendant Yoo is reasonable and proper in this District because Defendant Yoo is a citizen of the State of New York, and he conducted, and still conducts, extensive business activities within the State of New York.  Defendant Yoo is the CEO of Elohim for the Eastern United States Operation, and his office is located at 162-10 Crocheron Ave., 2nd Floor, Suite E, Flushing, NY 11358.  Defendant Yoo engaged in intentional, wrongful, illegal, and/or tortious acts of: a) sending, or causing to be sent, multiple letters, containing false and misleading information, from March 23, 2017 to December 20, 2024, demanding copyright licensing fees and threatening lawsuits; (b) visiting the SDNY Action Plaintiffs' karaoke establishments, posing as patrons, to manufacture causes of action and evidence in connection with the 18 Dismissed Songs; c) making false representations that Elohim owned exclusive copyright to thousands of songs, including the 18 Dismissed Songs; d) threatening to suspend Plaintiffs' business operations and the impoundment of the karaoke machines; e) demanding payment of

purported copyright licensing fees; f) filing, or causing to be filed, multiple Declarations sworn to under penalty of perjury with U.S. Court; and g) falsely testifying that Elohim owned exclusive copyright to the 18 Dismissed Songs for the purpose of extorting money from Plaintiffs and other various karaoke establishments in Queens and Manhattan, New York. Defendant Yoo engaged in these acts at the direction of Defendant Cha, the mastermind in the Enterprise, and Defendant Yoo and Defendant Cha met multiple times in order to orchestrate campaigns of sending multiple threatening letters containing false and misleading information, making multiple threatening phone calls, and making multiple personal visits to Plaintiffs' karaoke establishments, all in an effort to defraud, and extort money from, Plaintiffs and other various karaoke establishments in New York. Thus, for Plaintiffs' claims for violation of 18 U.S.C. § 1962 and New York state law, exercise of jurisdiction over Defendant Yoo is proper pursuant to 18 U.S.C. § 1965(a) and NY CPLR § 301.

54.    Exercise of jurisdiction over Elohim is proper pursuant to 18 U.S.C. § 1965(b) and NY CPLR § 302. The RICO Defendants have transacted business and engaged in tortious conduct in the State of New York, using Elohim as a "vehicle," to defraud, and extort money from, Plaintiffs and other various karaoke establishments in New York. Defendant Cha and Defendant Yoo sent numerous letters containing false and misleading information, under the name of Elohim, to Plaintiffs and other various karaoke establishments in New York claiming that Elohim owned exclusive copyright to unspecified thousands of songs. Those letters were sent to Plaintiffs and other various karaoke establishments in New York, under the name and letterhead of Elohim, from March 23, 2017 to December 20, 2024, and the letters not only contained demand for purported copyright licensing fees for unspecified thousands of songs, but also contained false and misleading information, threats of litigation, suspension of Plaintiffs' business operations, and

economic harm and/or consequences if the desired payments were not made. Defendant Cha traveled to New York to meet with Defendant Yoo to orchestrate campaigns to extort money from Plaintiffs and other various karaoke establishments in New York in furtherance of the extortionate scheme under the name of Elohim. The RICO Defendants brought fraudulent claims premised upon the 18 Dismissed Songs naming Elohim as a plaintiff in the SDNY Action, and they submitted multiple false and misleading statements through their Declarations sworn to under penalty perjury in support of Elohim's fraudulent claims premised upon the 18 Dismissed Songs. Defendant Cha, under the name of Elohim, made a fraudulent public announcement through radio channel, called AM 1660, representing that Elohim owned exclusive copyright to thousands of songs, and if Plaintiffs bring a lawsuit based on Elohim's fraudulent claims premised upon the 18 Dismissed Songs, there will be devastating consequences to all karaoke establishments in New York. The RICO Defendants acted in concert with each other and conducted the affairs of Elohim using Elohim as a "vehicle" to defraud, and extort money to which Elohim was not entitled from, Plaintiffs and various other karaoke establishments in New York. The RICO Defendants directed a multitude of phone calls, emails, and other forms of communication among themselves in conducting and managing the affairs of the Enterprise. In fact, Defendant Cha, under the name of Elohim, has been collecting copyright licensing fees for unspecified thousands of songs on a monthly basis from multiple karaoke establishments located in Flushing, New York and on West 32nd Street in Korea Town, Manhattan, New York. The RICO Defendants were aware of the effects in New York of those acts done under the name of Elohim. The RICO Defendants, using Elohim as a "vehicle," intentionally targeted the karaoke establishments in New York.

## FACTUAL ALLEGATIONS

55.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

56.    The RICO Defendants were, and still are, engaged in a racketeering scheme to intimidate Plaintiffs and other various karaoke establishments in various other states, including, but not limited to, California, New York, and New Jersey, all in an effort to coerce them into paying Elohim money to which Elohim was never entitled through their systematic and repeated "shakedown" effort.

57.    Since as early as March 2017 until the present, Defendant Cha and Defendant Yoo, using Elohim as a "vehicle," sent numerous letters, containing false and misleading information, to Plaintiffs claiming that Elohim owned copyright to unspecified thousands of Korean songs and demanding payment of purported copyright licensing fees.

58.    Said letters not only demanded payments of money but also included threats of litigation if the desired payments were not made.

59.    Said letters also included the admonition that Plaintiffs should not listen to their attorneys' advice.

### Letters Sent to Plaintiffs in 2017 and 2018 under the Name of Elohim

60.    Defendant Cha and Defendant Yoo, using Elohim as a "vehicle," sent numerous letters demanding payment of purported copyright licensing fees for unspecified thousands of songs to Plaintiffs beginning in March 2017.

61.    Defendant Cha sent a letter, or caused a letter to be sent, under the name of Elohim under its letterhead, dated March 23, 2017, to Plaintiffs and other various karaoke establishments

in New York, demanding payment of purported copyright licensing fees for unspecified thousands of songs.

62.     The March 23, 2017 letter states, in relevant part, that:

Elohim has been filing lawsuits against 22 karaoke establishments and room salons, and on October 1, 2025, as a result of filing summary judgment motion, the federal court in CV-14-02496-BRO (Ex) issued a decision granting summary judgment in favor of Elohim.

Elohim is the publisher for thousands of songs in the United States, recipients of this letters should contact Elohim and arrange payment for copyright licensing fees, copyright infringer could be held liable both civilly and criminally, copyright infringement is a criminal conduct, cease and desist means "Order Suspending Business Operation," and in the event that recipient does not contact Elohim within 15 days of its receipt of the letter, Elohim will consult with its attorneys and take legal actions.

63.     The March 23, 2017 letter further states that:

In Case of Karaoke A: Elohim initially claimed $18,000.00; Karaoke A's counsel made a settlement offer, and Elohim settled with Karaoke A for $105,000.00;

In case of Karaoke B: Elohim initially claimed $15,000.00; Karaoke B's counsel made a settlement offer, and Elohim settle with Karaoke B for $75,000.00; and

In case of Karaoke C: Elohim initially claimed $15,000.00; Karaoke C's counsel made a settlement offer, and Elohim settled with Karaoke C for $65,000.00.

Said amounts do not include attorneys' fees awarded to Elohim, and Elohim is sending this letter in order to avoid wasting time and costs for such litigation.

64.    The March 23, 2017 letters are identical, except that those letters have different recipients' names and addresses.

65.    The March 23, 2017 letters did not specify the songs to which Elohim claimed copyright.

66.    Defendant Cha and Defendant Yoo sent a letter, or caused a letter to be sent, through Elohim's then general counsel, Woods & Yoo, P.C., a California-based law firm, dated August 1, 2017, to Plaintiffs and other various karaoke establishments in New York, demanding payment of purported copyright licensing fees for unspecified thousands of songs.

67.    The August 1, 2017 letter states, in relevant part, that:

> "As you are very aware, Elohim represents numerous music publishers, artist, lyricists and song writers to collect and enforce their copyrights within the territorial United States of America and Canada. We have in our possession, evidence that your establishment has caused to play for the public the musical sound recordings of artists that Elohim represent without obtaining any licensing to do so. In order for you to legally cause the public performance of these musical compositions, the United States Copyright Act, 17 U.S.C. § 106(4), requires that your company obtain a license to do so."

> "Since you have failed to obtain a license from our client for these public performances for year 2016, you are hereby demanded to immediately *CEASE AND DESIST* the playing of any musical sound recordings by any of the musical publishers, artist, lyricists and song writers that Elohim represents. Be advised, however, that our client retains the rights to approximately 17,000 titles and you run the risk of violation this "cease and desist" demand should you continue to publicly play Korean songs without verification of each song title against our client's catalog."

> "Should you continue to ignore the demands of our client to cease and desist your egregious violation of our client's copyright protection under the United States Copyright Act as it pertains to public performance, our client could pursue treble damages for your willful and deliberate breach, 17 U.S.C. § 504(d). This would allow our client to seek three times the licensing fees our client would have been entitled to for the past three years in addition to our client's actual damages, as well as, disgorgement of your profits. Moreover, should our client elect to pursue statutory damages, you could be found liable in an amount up to $150,000 per violation, 17 U.S.C. § 504(c)(2)."

"Despite the damages our client would be legally entitled to under §§ 504 and 505 of the Copyright Act, Elohim has generously agreed to forego the necessity of an expensive and time-consuming lawsuit in the event you agree to pay their reasonable licensing fee for 2016…"

**"In the event you fail to contact his office or Elohim's office within the allotted time, our client's offer shall be deemed rescinded and we shall instruct our associate counsel, Brandon Tesser, a leading attorney in the area of copyright law to include you and your company in a lawsuit in the United States District Court for copyright infringement and seek all the aforementioned remedies and damages. If you have been sued in the past, you should already know the costs of defending such a lawsuit are enormous."**

"FYI, Federal Court has granted rights to enforce and collect from the Karaoke bars and all the defendants have reached settlement for their infringement and their monthly Karaoke license fees"

68.    The August 1, 2017 letter did not even specify the songs to which Elohim claimed to have exclusive copyright. Instead, said letter simply demanded payment of purported copyright licensing fees for unspecified thousands of songs allegedly owned by Elohim. Said letter further stated that if the desired payments were not made, then Elohim will inflict, and the recipient will face, treble damages in tens of thousands of dollars and enormous costs of defending a lawsuit.

69.    Each of the August 1, 2017 letters sent to Plaintiffs were accompanied by the Contact Information page stating that:

**Head Office**
David Cha – C.E.O.
317 W. La Habra Blvd., #200
La Habra, CA 90631
Tel.: (626) 872-6070  (213) 446-2991
Email: info@alohimepfusa.com

**New York Office:**
Mr. Nam Hyun Yoo – President
East Coast Operation
162-10 Crocheron Ave., 2nd Floor
Suite E
Flushing, New York 11358
Tel.: (718) 888-8259
Email: info@elohimepfusa.com

16

70.    The August 1, 2017 letter directed the recipient to contact Elohim's office at (718) 888-8259, the phone number listed for Defendant Yoo at the New York Office.

71.    The August 1, 2017 letters are identical, except that those letters have different recipients' names and addresses.

72.    The August 1, 2017 letters did not specify the songs to which Elohim claimed copyright.

73.    Defendant Cha and Defendant Yoo sent a letter, or caused a letter to be sent, under the name of Elohim under Elohim's letterhead, dated April 16, 2018, to Plaintiffs and other various karaoke establishments in New York, demanding payment of purported copyright licensing fees for unspecified thousands of songs.

74.    The April 16, 2018 letter states, in relevant part, that:

"THIS IS OUR FINAL ATTEMPT TO SETTLE WITH YOUR ESTABLISHMENT BEFORE WE TURN IT OVER TO OUR COUNSEL!"

"We, Elohim have sent the two letters in 2017; 1) Attorney's Cease and Desist 2) Demand Annual music license fee and violation of music copyright infringement at your establishment.  .However, we have not received any kind of response from you so that we are sending this letter as our last and final attempt to settle with your establishment before we turn it over our law firm to file the copyright infringement lawsuit at U.S. district Court.  We (Elohim EPF USA, Inc.) want to find an amicable solution with your establishment.  Please note that some of the karaoke places have already settled with us in 2017 and we are hoping that you will soon settle with us and stay away from the lawsuits" (*sic*).

"As you probable already aware, we have filed 6 different infringement lawsuits against more than 60 karaoke bars, private room salon, open karaoke bars combined since 2014 in Southern and Northern California and we have won all these lawsuits by either favor ruling on the summary judgment or lack of defense by defense counsels and through the mediation court.  **The defendants (Karaoke bars and private room salons) ended up with tremendous financial loss by paying settlements on the past infringements, and their attorneys' fees due to these lawsuits.  Please understand that Elohim didn't want these lawsuits whatsoever but these owners were just too ignorant and received wrong**

**opinions from their counsels. These owners could've saved tens of thousands of dollars by paying small money for their past and current license fees"** (*sic*).

**"Please ask yourself whether legal lawsuit is your best solution or find an amicable solution with Elohim is the smart and better choice…"** (*sic*).

"Please note that ASCAP, BMI, SESAC and none of the collection societies in the United States have rights for your lyrics. This is "Display Rights" which none of the Karaoke Bars have this license for their music. We are the only company have the Display rights for your establishments and you have been infringed since you started your operation on your business. And please note that KOMCA (Korea Music Copyright Association) has no right whatsoever in the United States. KOMCA has the rights in Korea, not in U.S. **Please do not listen to your attorneys!"** (*sic*).

**"In the event you fail to contact to our office within 10 days allotted time, we have no choice but to instruct our counsel Brandon Tesser, a leading attorney in the area of copyright law to include you and your company in a lawsuit in the United States District Court for copyright infringement and seek all the aforementioned remedies and damages."** (*sic*).

75.     Each of the April 16, 2018 letters sent to Plaintiffs listed Defendant Cha as the CEO of Elohim and Defendant Yoo as the President of Elohim for the New York and East Coast Operation and directed the recipients to contact either the California headquarters or the New York Office.

76.     The April 16, 2018 letters are identical, except that those letters have different recipients' names and addresses.

77.     The April 16, 2018 letters did not specify the songs to which Elohim claimed copyright.

78.     Defendant Cha and Defendant Yoo sent a letter, or caused a letter to be sent, through Elohim's then counsel, Tesser Grossman, LLP, a California-based law firm, dated May 16, 2018, to Plaintiffs and other various karaoke establishments in New York, demanding payment of purported copyright licensing fees for unspecified thousands of songs.

79.     The May 16, 2018 letter states, in relevant part, that:

"This firm represents Elohim EPF USA, Inc. ("Elohim"). Elohim is the United States sub-publisher for thousands of Korean songs (the "Elohim Compositions"). It has come to our attention that your establishment has karaoke machines on its premises which contain the Elohim Compositions."

"Elohim takes its responsibilities as sub-publisher very seriously and actively pursues all known instances of copyright infringement. By way of example, in July 2014 Elohim filed approximately 19 lawsuits in the United States District Court, Central District against variously karaoke bars located in Southern California for copyright infringement. The lawsuits were eventually consolidated together before a single judge under Case No.2:14-cv-02496 BRO (Ex)." (hereinafter, the "**California Action**").

"During the course of that lawsuit the Federal District Court Judge determined, among other things, that: 1) Elohim was the sub-publisher of the Elohim Compositions; b) Elohim's U.S. copyright were valid; c) the karaoke defendants had infringed on Elohim's copyrights (based on the evidence which Elohim submitted, which is the same type of evidence Elohim has ***already collected*** regarding your establishment); d) the karaoke defendants were obligated to pay statutory damages to Elohim for infringement; and e) **none of the various defenses asserted by the karaoke defendants had any merit**."

"In 2016 and 2017 Elohim filed additional lawsuits against approximately 18 karaoke establishments in the United States District Court, Central District bearing Case Nos. 2:16-cv-07796; 2:17-cv00630, and 2:17-cv-05768. Those lawsuits were recently resolved in Elohim's favor after it filed motions for summary judgment."

**"Be advised that, if you elect not to cease and desist from your infringing activities and not to enter into a license agreement with Elohim, then Elohim will have no choice other than to bring an action for copyright infringement against your establishment within this judicial district."**

80.    The May 16, 2018 letters are identical, except that those letters have different recipients' names and addresses.

81.    The May 16, 2018 letters did not specify the songs to which Elohim claimed copyrights.

82.    The statements contained in the March 23, 2017 letter were false and misleading in that "cease and desist" does not mean an Order suspending Plaintiffs' business operations, and by mischaracterizing the meaning of cease and desist, Defendants Cha attempted to defraud Plaintiffs

and coerce Plaintiffs into paying purported copyright licensing fees.  The statements contained in the March 23, 2017 letter were false and misleading in that the letter completely omitted the fact that the Court in the California Action, on October 1, 2015, found that the Enterprise utterly failed to possess any evidence to show its exclusive copyright ownership for 3,304 out of the 3,341 claimed songs, as described in more detail below.  The March 23, 2017 letter did not specify the songs to which the Enterprise owned exclusive copyright, and the Enterprise did not have any proof of infringing activities by Plaintiffs, and it had no right to collect any purported copyright licensing fees, because this letter pre-dated the RICO Defendants' personal visits to the SDNY Action Plaintiffs' karaoke establishments on February 27 and February 28, 2018.

83.    The statements contained in the August 1, 2017 letter, stating that Elohim has in its possession evidence that your establishment has caused to play for the public the musical sound recordings of artists that Elohim represent without obtaining any licensing to do so, were false and misleading in that this letter pre-dated the RICO Defendants' personal visits to the SDNY Action Plaintiffs' karaoke establishments on February 27 and February 28, 2018, and the Enterprise had no proof of any infringing activities by Plaintiffs and no right to collect any purported copyright licensing fees.  Through these false and misleading statements, Defendant Cha and Defendant Yoo attempted to defraud, and coerce, Plaintiffs into paying purported copyright licensing fees.

84.    The statements contained in the April 16, 2018 letter were false and misleading in that the Enterprise never possessed any rights to the 18 Dismissed Songs, and that ASCAP, BMI, and SESAC do in fact manage, administer, and license copyrights of famous Korean songs in the United States.  By making these false and misleading statements to Plaintiffs, the RICO Defendants attempted to defraud and trick Plaintiffs into paying purported copyright licensing fees for unspecified thousands of Korean songs to which the Enterprise could not, cannot, show copyright.

85.     The statements contained in the May 16, 2018 letter were false and misleading in that in the California Action (Case No.: 2:14-cv-02496 BRO [Ex]), some of the defendants entered into a settlement agreement in the innocent belief that the Enterprise actually owned exclusive copyright to all 3,341 claimed songs, and the Court in the California Action, on October 1, 2015, found that the Enterprise utterly failed to possess any evidence to show its exclusive copyright ownership for 3,304 out of the 3,341 claimed songs.  The Enterprise proffered a copyright registration for only 37 songs out of 3,341 claimed songs, and the defendants in the California Action elected not to fully litigate the matter and entered into a settlement with respect to said 37 songs.  It is striking, however, that said 37 songs included 8 songs – "Go Hae," "Gudaewa Hamke," "Neomanul Nukimyeo," "My Boy," "Gil Eul Geot Da Ga," "Gin Sang Meo Ri Geu Nyeo," "Sa Rang Ha Go Sip Eo," and "Love Attack" – that were dismissed in the SDNY Action with prejudice for Elohim's failure to establish a valid chain of title.  Additionally, the October 1, 2015 decision in the California Action was issued as part of both sides' highly contested motion and cross-motion for summary judgment practices, and the statements contained in the May 16, 2018 letter stating that none of the various defenses asserted by the karaoke defendants had any merit is false and misleading, as the Enterprise's motion for summary judgment on all 3,304 claimed songs were granted in part and denied in part denying summary judgment with respect to the 3,304 songs that the Enterprise claimed to have exclusive copyrights.  In the California Action, the defendants raised multiple evidentiary objections and arguments pertaining to Elohim's failure to proffer evidence to prove a valid chain of title and exclusive copyright ownership of all 3,341 songs, and the defendants succeeded in establishing that Elohim did not have any proof to show that it owned exclusive copyright to 3,304 out of the 3,341 claimed songs.

86.    Upon receiving those letters, Plaintiffs and other various karaoke establishments formed an association, named Korean Entertainment Association USA, Inc. (the "**Association**," as defined above), in order to collectively respond to Elohim's baseless dunning letters demanding payment of purported copyright licensing fees for unspecified thousands of songs allegedly owned by Elohim.

87.    The SDNY Action Plaintiffs and the Non-SDNY Action Plaintiffs, who are members of the Association, met periodically to determine to what songs Elohim was claiming exclusive copyright and discussed how they could resolve the issue(s) raised by Elohim in its multiple letters sent to Plaintiffs.

88.    In response to those letters claiming exclusive copyright ownership of unspecified thousands of Korean songs, Plaintiffs retained an attorney to ascertain the songs to which Elohim claimed exclusive copyright, and through the attorney, they demanded a copy of the contracts/agreements that Elohim claimed to give itself the right to certain Korean songs and a list of the songs to which Elohim claimed copyright.

89.    Despite Plaintiffs' multiple requests made on September 12, 2017, September 26, 2017, November 28, 2017, and June 4, 2018, neither Elohim nor Defendant Cha and Defendant Yoo provided the list of the songs to which Elohim claimed copyright and continuously demanded money for purported copyright licensing fees until the SDNY Action was filed in March 2019.

90.    In fact, the Court in the SDNY Action in its Opinion and Order on Fees and Costs (1:19-cv-02431-PKC-SDA; Hon. P. Kevin Castel, U.S.D.J., presiding), denying Elohim's Motion for Attorneys' Fees and Costs, explicitly stated in connection with the various letters that were sent to the SDNY Action Plaintiffs and other karaoke establishments in 2017 and 2018 that "[a] recipient of these letters would not know which songs Elohim claimed to own or what songs were

claimed to be unlawfully performed and displayed at the recipient's establishment. The 2017 letters appear to predate any of Elohim's visits to defendants' establishments for the purpose of determining whether defendants had infringed Elohim's performance rights. The letters did not give their recipients intelligent notice of any purportedly infringing conduct or any reason to believe that Elohim had a meritorious claim for copyright infringement. The admonition in the letter of April 16, 2018 that the recipient should 'not listen' to attorney['s] advice or rely on licenses from ASCAP or BMI gives the communication the quality of a shakedown."

91.    Subsequently, in March 2019, the SDNY Action ensued.

**The Frivolous Claims in the SDNY Action alleging**
**Copyright Infringement of the 18 Dismissed Song**

92.    On or about March 19, 2019, the RICO Defendants, using Elohim as a "vehicle," filed a copyright infringement lawsuit in the U.S. District Court for the Southern District of New York, naming approximately 43 karaoke establishments and individual owners as defendants, including the SDNY Action Plaintiffs, claiming for 3.75 million dollars per defendant – 161.25 million dollars in total.

93.    In said lawsuit, the RICO Defendants, using Elohim as a "vehicle," represented that Elohim owned exclusive copyright to the following 25 famous Korean songs for the first time:

(1)    Tteol Eo Jinda Nun Mul-I
(2)    Go Hae
(3)    Baramkyul
(4)    Sa Rang A
(5)    Ibyeol-Eun Sarang Dwileul Ttalawa
(6)    Ga Sum A-Pa Do
(7)    Gondre Mandrae
(8)    It Ji Mal A Yo
(9)    Kong Kak Ji

(Collectively, the **"First 9 Songs"**).

(10)    Gin Sang Meo Ri Geu Nyeo

(11)    My Boy
(12)    Gu Dae Wa Ham Ke
(13)    Neo Man Ul Nu Ki Myeo
(14)    Gil Eul Geot Da Ga
(15)    Sa Rang Ha Go Sip Eo
(16)    Love Attack
(17)    Jeong Sin I Na Gat Eot Na Bwa
(18)    Heo Sang

(Collectively, the **"Additional 9 Songs"**).

(19)    So Cool
(20)    Push Push
(21)    Sal Man Jji Go
(22)    Ni Kka Jit Ge
(23)    Ga Sik Girl
(24)    Bae A Pa
(25)    Hot Boy_Big Star.

(Collectively, the **"Remaining 7 Songs"**)

94.    In the SDNY Action, the RICO Defendants for the first time claimed and represented that Elohim was the exclusive owner of the United States copyrights in and to the claimed 25 songs.

95.    In the SDNY Action, the RICO Defendants further claimed and represented that Elohim has had and continued to have the exclusive rights in the copyright under the Copyright Act to the 25 songs, including: a) the exclusive right to reproduce the songs in copies or phonorecords; (b) the exclusive right to prepare derivative works based on the songs; c) the exclusive right to distribute copies or phonorecords of the songs in the public by sale, rental, lease, or lending; d) the exclusive right to perform the songs publicly; and e) the exclusive right to display the songs publicly.

96.    The SDNY Action Plaintiffs were served with a copy of the copyright infringement complaint in the SDNY Action on April 16, 2019, and they learned of the 25 songs to which Elohim claimed exclusive copyrights for the first time on April 16, 2019.

97.     Shortly after the copyright infringement lawsuit was filed in the SDNY Action and the complaint was served upon the SDNY Action Plaintiffs and other various karaoke establishments and their owners, Defendant Yoo, who was and still is the CEO of Elohim for the Eastern United States Operation, personally visited the karaoke establishments of the SDNY Action Plaintiffs, as well as the Non-SDNY Action Plaintiffs, who were not named as defendants in the SDNY Action, and made representations that: a) Elohim owned exclusive copyrights to the 25 claimed songs; b) a lawsuit has been filed for copyright infringement of the 25 claimed songs against various karaoke establishments in Flushing and Manhattan, New York; and c) Plaintiffs were required to pay copyright licensing fees pertaining to the 25 claimed songs; otherwise, there will be a judgment against them.[1]

98.     On or about April 25, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United States Operation, came to Flower Karaoke's business establishment, located at 162-05 Crocheron Ave., Flushing, NY 11358, and represented to Plaintiff Dong Hyun Ha that Elohim owned exclusive copyright to the 25 claimed songs and demanded payment of purported copyright licensing fees.

99.     On or about April 25, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United States Operation, came to Open Karaoke's business establishment, located at 40-20 149th Place, Flushing, NY 11354, and represented to Plaintiff Jin Hyun Ryu that Elohim owned exclusive copyrights to the 25 claimed songs and demanded payment of purported copyright licensing fees.

100.    On or about April 25, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United States Operation, came to Musicbox KTV's business establishment, located at 40-15 150th Street, Flushing, NY 11354, and represented to Plaintiff Anthony Kim that Elohim owned

---

[1] Although the SDNY Action Plaintiffs were named defendants in the SDNY Action, the Non-SDNY Action Plaintiffs were not named defendants in the SDNY Action.

exclusive copyrights to the 25 claimed songs and demanded payment of purported copyright licensing fees.

101.    On or about April 25, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United States Operation, came to Sagwa Namoo's business establishment, located at 162-07 Depot Road, Flushing, NY 11358, and represented to Plaintiff Kyung Soon Nam that Elohim owned exclusive copyrights to the 25 claimed songs and demanded payment of purported copyright licensing fees.

102.    On or about April 25, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United States Operation, came to Boomerang's business establishment, located at 40-31 162nd Street, Flushing, NY 11358, and represented to Plaintiff Yong Suk Ko that Elohim owned exclusive copyrights to the 25 claimed songs and demanded payment of purported copyright licensing fees.

103.    On or about April 25, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United States Operation, came to Tomato's business establishment, located at 41-18 162nd Street, Flushing, NY 11358, and represented to Plaintiff Eun Hee Cho that Elohim owned exclusive copyrights to the 25 songs and demanded payment of purported copyright licensing fees.

104.    On or about April 25, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United States Operation, came to Tambourine's business establishment, located at 41-03 162nd Street, Flushing, NY 11358, and represented to Plaintiff Yoora Cho that Elohim owned exclusive copyrights to the 25 songs and demanded payment of purported copyright licensing fees.

105.    On or about April 26, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United States Operation, came to Versace's business establishment, located at 36-13 164th Street, Flushing, NY 11358, and represented to Plaintiff Daehwang Kim that Elohim owned exclusive copyrights to the 25 songs and demanded payment of purported copyright licensing fees.

26

106.    On or about April 26, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United States Operation, came to Waba's business establishment, located at 161-18 Northern Blvd., Flushing, NY 11358, and represented to Plaintiff Shanzi Che that Elohim owned exclusive copyrights to the 25 songs and demanded payment of purported copyright licensing fees.

107.    On or about April 27, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United States Operation, came to All In's business establishment, located at 35-74 159th Street, Flushing, NY 11358, and represented to Plaintiff Jin Kim that Elohim owned exclusive copyrights to the 25 songs and demanded payment of purported copyright licensing fees.

108.    On or about April 27, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United State Operation, came to Okay's business establishment, located at 36-11 164th Street, Flushing, NY 11358, and represented to Plaintiff Kyu Soon Yang that Elohim owned exclusive copyrights to the 25 songs and demanded payment of purported copyright licensing fees.

109.    On or about April 27, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United States Operation, came to Hae Gung's business establishment, located at 164-10 Northern Blvd., Flushing, NY 11358, and represented to Plaintiff Meihua Li that Elohim owned exclusive copyrights to the 25 songs and demanded payment of purported copyright licensing fees.

110.    On or about April 27, 2019, Defendant Yoo, as the CEO of Elohim for the Eastern United States Operation, came to Eelang's business establishment, located at 36-27 164th Street, Flushing, NY 11358, and represented to Plaintiff Mi Suk Cho that Elohim owned exclusive copyrights to the 25 songs and demanded payment of purported copyright licensing fees.

111.    At the time Defendant Yoo visited each of the SDNY Action Plaintiffs' karaoke establishments, Defendant Yoo claimed that Elohim will prevail in the SDNY Action on all 25

claimed songs and that it would be better for the SDNY Action Plaintiffs to settle the SDNY Action and start paying copyright licensing fees.

112.    At the time Defendant Yoo visited each of the Non-SDNY Action Plaintiffs' karaoke establishments, Defendant Yoo claimed that there is a pending copyright infringement lawsuit for the 25 claimed songs, that he knew that those songs were contained in the Non-SDNY Action Plaintiffs' karaoke machines, that although they were not named as defendants in the SDNY Action, they were still required to pay purported copyright licensing fees because the SNDY Action will affect them as well, that if they fail to make required payments for purported copyright licensing fees, the Court will issue an Order suspending their business operations and the impoundment of the karaoke machines in near future, and purported copyright licensing fees should be paid to Elohim.

113.    Relying on these representations – representations that were made in the complaint filed in the SDNY Action and representations that were made by Defendant Yoo in person – Plaintiffs proceeded to permanently delete the 25 claimed songs from their karaoke machines, as they had first learned of the songs to which Elohim claimed exclusive copyright on April 16, 2019, when the complaint was served upon the SDNY Action Plaintiffs, and thereafter when Defendant Yoo visited each of the Non-SDNY Action Plaintiffs' karaoke establishments on April 25, 2019, April 26, 2019, and April 27, 2019, respectively.

114.    At the time, each of Plaintiffs used the karaoke machines manufactured and distributed by a company, named "Taejin Media," for their karaoke business operations.

115.    Taejin Media, a South Korea based company, is the company that manufactures and distributes karaoke machines to the karaoke establishments throughout the United States.

116.    Relying on these representations, Plaintiffs contacted Taejin Media, a karaoke machine manufacturer and distributor, and requested that the 25 claimed songs be permanently deleted from their karaoke machines, so Plaintiffs would not violate Elohim's alleged exclusive copyrights to the 25 claimed songs.

117.    As a result, since April 2019, Plaintiffs were not able to use the 25 claimed songs in their karaoke machines for their karaoke businesses believing that Elohim did in fact own exclusive copyrights to said 25 claimed songs.

118.    Relying on these representations, Plaintiffs collectively retained an attorney to represent the SDNY Action Plaintiffs in the SDNY Action, and each of Plaintiffs named herein collectively contributed towards the defense costs and attorneys' fees because they believed that the outcome of the SDNY Action will affect not only the SDNY Action Plaintiffs but also the Non-SDNY Action Plaintiffs.

119.    That is, despite the fact that the Non-SDNY Action Plaintiffs were not named as defendants in the SDNY Action, they relied on Defendant Yoo's representations that the outcome of the SDNY Action would affect their business operations, and the Court will soon issue an Order suspending their business operations and the impoundment of the karaoke machines.

120.    Thus, each and every Plaintiff herein joined together as the Association and contributed towards the defense costs and attorneys' fees in defending the fraudulent claims premised upon the 18 Dismissed Songs for over 4 years.

**Plaintiffs' Discovery of Elohim's Frivolous Claims**
**Premised Upon 9 out of the 25 Claimed Songs**

121.    Throughout the SDNY Action, the SDNY Action Plaintiffs repeatedly requested that the RICO Defendants produce the existing copyright assignment documents from the original authors to the Enterprise pertaining to the 18 Dismissed Songs; however, the RICO Defendants

continuously refused to, or otherwise failed to, produce the copyright assignment documents that give the Enterprise exclusive copyright ownership of the 18 Dismissed Songs.

122.    On December 3, 2021, Plaintiffs learned for the first time that Elohim did not own exclusive copyrights to the First 9 Songs.

123.    On December 3, 2021, the RICO Defendants, through Elohim, voluntarily admitted that it could not prove complete chain of title to the First 9 Songs:

(1)    Go Hae
(2)    Baramkyul
(3)    Sa Rang A
(4)    Ibyeol-Eun Sarang Dwileul Ttalawa
(5)    Ga Sum A-Pa Do
(6)    Gondre Mandrae
(7)    It Ji Mal A Yo
(8)    Kong Kak Ji

124.    The RICO Defendants, through Elohim, voluntarily admitted that Elohim could not prove its exclusive copyright ownership of the First 9 Songs.

125.    As a result, Elohim's copyright infringement claims premised upon the First 9 Songs were dismissed with prejudice.

126.    Despite the fact that Elohim did not own exclusive copyrights to the First 9 Songs, the RICO Defendants falsely represented that Elohim held the exclusive ownership of the First 9 Songs from March 19, 2019 up until December 3, 2021.

**Plaintiffs' Discovery of Elohim's Frivolous Claims
Premised Upon an Additional 9 out of the 25 Claimed Songs**

127.    On the eve of trial, July 13, 2023, Plaintiffs learned for the first time that Elohim did not own exclusive copyrights to the Additional 9 Songs:

(10)    Gin Sang Meo Ri Geu Nyeo
(11)    My Boy
(12)    Gu Dae Wa Ham Ke
(13)    Neo Man Ul Nu Ki Myeo

     (14)   Gil Eul Geot Da Ga
     (15)   Sa Rang Ha Go Sip Eo
     (16)   Love Attack
     (17)   Jeong Sin I Na Gat Eot Na Bwa
     (18)   Heo Sang

128.    The RICO Defendants, through Elohim, once again admitted that Elohim was not in possession of the necessary documents to establish a valid chain of title to the Additional 9 Songs.

129.    On July 14, 2023, the SDNY Action was called to a bench trial.  At the beginning of the trial, the U.S. District Court for the Southern District of New York dismissed all claims premised upon the Additional 9 Songs with prejudice.

130.    Despite the fact that Elohim did not have, and could not produce, the necessary documents to establish a valid chain of title to the Additional 9 Songs, the RICO Defendants falsely represented that Elohim held the exclusive copyrights to the Additional 9 Songs from March 19, 2019 to July 13, 2023 for over 4 years.

131.    The RICO Defendants knew, or should have known, that Elohim did not own exclusive copyrights to the First 9 Songs and the Additional 9 Songs (collectively, the "18 Dismissed Songs"), as the RICO Defendants, through Elohim, conceded that Elohim could not prove the exclusive copyright ownership of the 18 Dismissed Songs.

132.    Despite that, throughout the SDNY Action, the RICO Defendants repeatedly and falsely represented to the Court and the SDNY Action Plaintiffs that Elohim owned exclusive copyright to the 18 Dismissed Songs and forced Plaintiffs to incur a substantial amount of legal expenses in defending the frivolous claims premised upon the 18 Dismissed Songs for over 4 years.

133.    Plaintiffs have expended $456,181.75 as legal costs in connection with their efforts to ascertain the songs to which Elohim claimed to own exclusive copyrights and in defending the

Case 1:25-cv-02227-JHR    Document 1    Filed 03/18/25    Page 32 of 118


frivolous claims premised upon the 18 Dismissed Songs brought by the RICO Defendants using Elohim as a "vehicle."[2]

134.    Adding insult to the injury, even though the RICO Defendants could not prove a valid chain of title to the 18 Dismissed Songs in the SDNY Action, the RICO Defendants, using Elohim as a "vehicle," boldly registered the 18 Dismissed Songs with the U.S. Copyright Office so that they could commence a copyright infringement action against the SDNY Action Plaintiffs and other various karaoke establishments in New York and seek damages of multi-million dollars.

135.    In California alone, the RICO Defendants, using Elohim as a "vehicle," commenced multiple actions in their attempt to strong-arm karaoke establishments into paying Elohim to settle the copyright infringement claims despite that Elohim could not prove exclusive copyright ownership.   For instance, the RICO Defendants commenced the California Action against 28 defendants, claiming that the defendants infringed upon Elohim's exclusive copyright upon 3,341 songs.   Some of the defendants in that action entered into a settlement agreement in the innocent belief that Elohim actually owned exclusive copyright to all 3,341 songs, and they have been paying purported copyright licensing fees to Elohim.

---

[2] As many courts have found, such damages may constitute injuries to business or property under § 1964(c) so long as they were "proximately caused by a RICO violation." *See, e.g., Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993) (finding legal fees spent in response to defendants' illegal actions to be RICO injuries because "legal fees may constitute RICO damages when they are proximately caused by a RICO violation."); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1998) (allowing recovery of "an unspecified amount in legal fees and other expenses incurred in fighting defendants' frivolous lawsuits in New York state court."); *Chevron  Corp. v. Donziger*, 871 F.Supp.2d 229, 253 & n. 130 (S.D.N.Y.2012) ("[Plaintiff] more than sufficiently has alleged at least that it has sustained substantial attorneys' fees and professional costs in responding to defendants' allegedly fraudulent states to U.S. courts…"); *Sykes v. Mel Harris & Assoic., LLC*, 757 F.Supp.2d 413, 427-28 (S.D.N.Y. 2010) ("[D]efendants' pursuant of default judgments and attempts to enforce them against plaintiffs proximately caused their injuries, which include the… incurring of legal costs to challenge those default judgments."); *Ritter v. Klisivitch*, 2008 WL 2967627, at *8 (holding that "legal fees and other expenses incurred" as a result of defendant's alleged RICO violations constituted a RICO injury.); *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F.Supp.2d 369, 382 (S.D.N.Y. 2002) (finding attorneys' fees and expenses incurred in connection with fraudulent legal proceedings to be sufficient RICO injuries), aff'd, 385 F.3d 159 (2d Cir. 2004).

136.    Nonetheless, the U.S. District Court for the Central District of California in the California Action, on October 1, 2015, found that Elohim utterly failed to possess any evidence to show its exclusive copyright ownership for 3,304 out of the 3,341 claimed songs.  Elohim proffered a copyright registration for 37 songs, and the defendants in the California Action elected not to fully litigate the matter and entered into a settlement with respect to said 37 songs.

137.    It is striking, however, that said 37 songs included 8 songs – "Go Hae," "Gudaewa Hamke," "Neomanul Nukimyeo," "My Boy," "Gil Eul Geot Da Ga," "Gin Sang Meo Ri Geu Nyeo," "Sa Rang Ha Go Sip Eo," and "Love Attack" – that were dismissed in the SDNY Action with prejudice for Elohim's failure to establish a valid chain of title.

138.    The RICO Defendants' fraudulent conduct did not stop there.   The RICO Defendants, using Elohim as a "vehicle," continued to sue karaoke establishments in other states for alleged performance of the songs to which Elohim could not, and cannot, establish exclusive copyright ownership.

139.    By their own admissions contained in various letters, dated from March 23, 2017 to May 16, 2018, the RICO Defendants, using Elohim as a "vehicle," had commenced more than 27 lawsuits in California alone against more than 78 karaoke establishments claiming exclusive copyrights to thousands of songs.

140.    The RICO Defendants, using Elohim as a "vehicle," commenced an action against 14 karaoke establishments in New Jersey for the identical causes of action and for the identical songs as in the SDNY Action in the U.S. District Court for the District of New Jersey in the NJ Action, where Elohim and all defendants entered into a settlement.

141.    The RICO Defendants had no right to collect any settlement and/or purported copyright licensing fees from the defendants in the NJ Action in connection with the 18 Dismissed

Songs, and the defendants in the NJ Action have been paying purported copyright licensing fees to Elohim believing that Elohim did in fact own exclusive copyrights to the 18 Dismissed Songs.

142.    Defendant Cha, who has been working in the music publishing industry for over 32 years since 1992, knew well before bringing such actions that Elohim did not own exclusive copyrights to the 18 Dismissed Songs.  Despite that, Defendant Cha persisted in these frivolous claims premised upon the 18 Dismissed Songs to invoke the judicial process in an attempt to extort and extract a purported settlement and copyright licensing fees.

143.    Defendant Yoo, who has been the CEO of Elohim for the Eastern United States Operation for over 7 to 8 years, as testified by Defendant Yoo, knew well before bringing such actions that Elohim did not own exclusive copyrights to the 18 Dismissed Songs.  Despite that, Defendant Yoo, along with Defendant Cha, persisted in these frivolous claims premised upon the 18 Dismissed Songs to invoke the judicial process in an attempt to extort and extract a purported settlement and copyright licensing fees.

144.    The RICO Defendants not only engaged in a scheme to extort money from Plaintiffs, through disseminations of multiple dunning letters and personal visits accompanied with threats of economic harm, but also engaged in a scheme to extract a quick settlement in a concerted abuse of the legal system in various states, including California, New York, and New Jersey, all in an effort to obtain money from Plaintiffs.

145.    The RICO Defendants deceitfully disguised, and still disguise, Elohim as an exclusive copyright holder of thousands of songs, including the 18 Dismissed Songs, in demanding lump sum settlement payment in addition to licensing fees from Plaintiffs before and after the commencement of the SDNY Action.

146.    Plaintiffs are small businesses in the New York metropolitan areas, and it has been the RICO Defendants' practice to send multiple dunning letters, containing false and misleading information, to these small businesses, threatening litigation, threatening order suspending business operations, and threatening unfavorable economic harm and/or consequences if the desired payments were not made, and to commence frivolous lawsuits to extract a quick settlement, all for the purpose of extorting money to which Elohim is not entitled from Plaintiffs and various karaoke establishments in New York.

147.    The RICO Defendants knew that these small businesses did not, and do not, have the financial strengths or means to fund such expensive, lengthy litigations in federal courts.  Thus, these small businesses end up either paying the desired payments or settling the lawsuits filed against them.

148.    As evidenced by the contents of the letters dated from March 23, 2017 to December 20, 2024, the RICO Defendants, under the name of Elohim, repeatedly and continuously threatened and emphasized that making the desired payments would be a better option for Plaintiffs, as it would cost them less than disputing Elohim's alleged copyright ownership through expensive, lengthy litigations.

149.    The RICO Defendants sought to intimidate Plaintiffs by telling them it would be more expensive for them to dispute Elohim's copyright ownership than it would be to pay purported copyright licensing fees to Elohim.

150.    When making these statements, the RICO Defendants were well aware that the relatively small amounts of purported copyright licensing fees would have prevented Plaintiffs from retaining counsel or from otherwise developing their defense given the additional expenses and inconveniences of lengthy and costly litigation in federal court.

151.     In light of the RICO Defendants' history of filing border-line frivolous copyright infringement cases in other jurisdictions, as well as their frivolous conduct in the SDNY Action, it can well be inferred that they brought meritless claims against numerous karaoke establishments to invoke the judicial process in an attempt to extract a settlement.

152.     Throughout the SDNY Action, the RICO Defendants continued to press the meritless claims premised upon the 18 Dismissed Songs for over 4 years and made multiple false and misleading statements to the U.S. District Court for the Southern District of New York.

### The RICO Defendants' Repeated, Fraudulent Misrepresentations Throughout the SDNY Action

153.     Throughout the SDNY Action, the RICO Defendants, using Elohim as a "vehicle," made multiple intentional misrepresentations to the Court in Elohim's Complaint, dated March 19, 2019, First Amended Complaint, dated January 20, 2020, and Second Amended Complaint, dated October 30, 2020, that:

>    (a) "pursuant to the terms of the Subpublishing agreements (or in certain specified instances, the publishing agreements) between Elohim and the copyright holders, Elohim registered" the 18 Dismissed Songs with the United States Copyright Office;
>
>    (b) "Elohim is the exclusive owner of the United States copyright in and to the" 18 Dismissed Song;
>
>    (c) "[d]uring all periods relevant to this action, Elohim has had and continues to have the exclusive rights in the copyright under the Copyright Act to the" 18 Dismissed Songs, "including a) the exclusive right to reproduce the Registered Compositions in copies or phonorecords…; b) the exclusive right to prepare derivative works based on the Registered Compositions…; c) the exclusive

right to distribute copies or phonorecords of the Registered Compositions in the public by sale, rental, lease or lending…; d) the exclusive right to perform the Registered Compositions publicly…; and e) the exclusive right to *display* the Registered Compositions publicly";

(d) "[w]ithin the past three years Defendants have, in the Karaoke Establishments, publicly performed and displayed and/or caused the public performance and display or, the Registered Compositions by means of karaoke machines, video monitors and sound system";

(e) Elohim "has not granted Defendants the right to publicly perform or publicly display any of the" 18 Dismissed Songs;

(f) "Defendants have known that their continued public performance and public display of each of the" 18 Dismissed Songs "constituted copyright infringement prior to the initiation of this action because Plaintiff sent cease and desist letters to Defendants";

(g) "[t]hus, despite Defendants' knowledge that they lacked authorization to publicly perform or publicly display the" 18 Dismissed Songs, "Defendants, knowingly, willfully and intentionally continued their extensive use of each of the" 18 Dismissed Songs "in their respective Karaoke Establishments and failed to pay Elohim for the right to publicly perform and publicly display each of the" 18 Dismissed Songs "as required by 18 U.S.C. §§ 106(4) and (5)";

(h) "Elohim is the copyright owner of the" 18 Dismissed Songs "and has public display of the" 18 Dismissed Songs "in the territory of the United States";

(i) "[s]ince the inception of the Karaoke Establishments, Defendants have publicly performed and publicly displayed, and/or caused or authorized the public performance and public display, of each of the" 18 Dismissed Songs "by means of one or more karaoke machines and through elaborate and expensive sound systems and video monitors.  Each of the public performances and public displays of the" 18 Dismissed Songs "has been conducted without a license or authorization from Plaintiff";

(j) "[t]hus, Defendants have knowingly and intentionally authorized, caused, and engaged in the unlicensed public performance and public display of each of the" 18 Dismissed Songs "in violation of Plaintiff's exclusive rights under the Copyright Act…"

(k) "[e]ach unauthorized public performance of each of the" 18 Dismissed Songs "constitutes a separate and distinct act of direct copyright infringement";

(l) "[e]ach unauthorized public display of each of the" "18 Dismissed Songs "constitutes a separate and distinct act of direct copyright infringement";

(m) "[t]he specific acts of copyright infringement alleged in this Complaint, as well as Defendants' entire course of conduct, have caused and are causing Plaintiff significant damage.  By continuing to provide unauthorized public performances and public displays of each of the" 18 Dismissed Songs "at their Karaoke Establishments, Defendants threaten to continue committing copyright infringement on essentially a daily basis.  Unless this Court restrains Defendants from committing further acts of copyright infringement, Plaintiff will suffer irreparable injury for which it has not adequate remedy at law";

(n) "Plaintiff also seeks an order under 17 U.S.C. § 503, directing the impoundment, destruction or other reasonable disposition of all infringing karaoke machines" (*emphasis added* to "impoundment," "destruction," and "disposition" of all infringing karaoke machines); and

(o) "[p]ursuant to 17 U.S.C. § 504(c), as a direct and proximate result of Defendants' direct infringement of Plaintiff's copyrights, Plaintiff is entitled to recover up to $150,000 in statutory damages for each of the Registered Compositions infringed. Alternatively, at Plaintiff's election, pursuant to 18 U.S.C. § 504(d), Plaintiff is entitled to its damages, including Defendants' profits from infringement, in connection with the Registered Compositions as will be proven at trial."

154.    Throughout the SDNY Action, Defendant Cha made multiple intentional misrepresentations to the Court as follows:

**Defendant Cha, in his Declaration sworn to under penalty of perjury, dated September 21, 2021, made intentional misrepresentations to the Court:**

(a) that Elohim is the exclusive copyright owner of Gin Sang Meo Ri Geu Nyeo, My Boy, Gudaewa Hamke, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack;

(b) that Flower Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 27, 2018, he personally witnessed said songs being performed and displayed and that he and/or Defendant Yoo

took photographs of said songs being performed and displayed at Flower Karaoke;

(c) that Musicbox KTV and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gin Sang Meo Ri Geu Nyeo, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 27, 2018, he personally witnessed said songs being performed and displayed and that he and/or Defendant Yoo took photographs of said songs being performed and displayed at Musicbox KTV;

(d) that Sagwa Namoo and its owner infringed upon Elohim's exclusive copyrights pertaining to the song – Love Attack – because, on February 28, 2018, he personally witnessed said song being performed and displayed and that he and/or Defendant Yoo took photographs of said song being performed and displayed at Sagwa Namoo;

(e) that Open Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 28, 2018, he personally witnessed said songs being performed and displayed and that he and/or Defendant Yoo took photographs of said songs being performed and displayed at Open Karaoke; and

(f) that Elohim regularly enters into license agreement with third parties for the public performance and/or public display of said songs.

**Defendant Cha, in his Declaration sworn to under penalty of perjury, dated December 3, 2021, made intentional misrepresentations to the Court:**

40

(a) that the SDNY Action involves defendants' unauthorized use of 25 songs that Elohim exclusively administers in the United States; and

(b) that Elohim exclusively administers in the United States the following registered songs – Gin Sang Meo Ri Geu Nyeo, My Boy, Gudaewa Hamke, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, Love Attack, Jeong Sin I Na Gat Eot Na Bwa, and Hoe Sang.

**Defendant Cha, in his Declaration sworn to under penalty of perjury, dated July 22, 2022, made intentional misrepresentations to the Court:**

(a) that Elohim is the exclusive United States sub-publisher for the following registered songs in the United States and Canada – My Boy, Gudaewa Hamke, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Gin Sang Meo Ri Geu Nyeo, Sa Rang Ha Go Sip Eo, Love Attack, Jeong Sin I Na Gat Eot Na Bwa, and Hoe Sang.

**Defendant Cha, in his Declaration sworn to under penalty of perjury, dated January 18, 2023, made intentional misrepresentations to the Court:**

(a) that Elohim is the exclusive United States sub-publisher for the following registered songs – Gin Sang Meo Ri Geu Nyeo, My Boy, Gudaewa Hamke, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, Love Attack, Jeong Sin I Na Gat Eot Na Bwa, and Hoe Sang;

(b) that he personally visited defendants' establishments between February 27 and 28, 2018;

(c) that after Elohim filed a complaint in the SDNY Action, he revisited the defendants' establishments in July 2019 to determine whether said songs were still playable on defendants' karaoke machines;

(d) that Elohim has never granted defendants a license to use said songs; and

(e) that defendants have never compensated Elohim for use of its registered songs.

**Defendant Cha, in his Declaration sworn to under penalty of perjury, dated June 23, 2023, made intentional misrepresentations to the Court:**

(a) that Elohim is the exclusive United States sub-publisher of the songs – Gin Sang Meo Ri Geu Nyeo, My Boy, Gudaewa Hamke, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, Love Attack, Jeong Sin I Na Gat Eot Na Bwa, and Hoe Sang;

(b) that as the exclusive United States sub-publisher, Elohim has the exclusive right to license, administer (including the grant of all licenses) and collect all income earned in connection with said songs in the United States, including the right to license the performance of said songs, we well as the display of their lyrics;

(c) that the South Korean songwriters of said songs assigned the rights to administer their works in the United States and other foreign territories to Elohim;

(d) that Elohim regularly enters into license agreements with third parties for the public performance and/or public display of said songs;

(e) that Flower Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 27, 2018, he personally visited and

witnessed said songs being performed and displayed and that he and/or Defendant Yoo took photographs of said songs being performed and displayed at Flower Karaoke;

(f)    that Musicbox KTV and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gin Gang Meo Ri Geu Nyeo, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because on February 27, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Yoo photographs of said songs being performed and displayed at Musicbox KTV;

(g)    that Sagwa Namoo and its owner infringed upon Elohim's exclusive copyrights pertaining to the song – Love Attack – because, on February 28, 2018, he personally visited and witnessed said song being performed and displayed and that he and/or Defendant Yoo took photographs of said song being performed and displayed at Sagwa Namoo; and

(h)    that Open Karaoke and its owner infringed upon Elohim's exclusive copyright pertaining to the songs – Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 28, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Yoo took photographs of said songs being performed and displayed at Open Karaoke.

155.    Throughout the SDNY Action, Defendant Yoo made intentional misrepresentations to the Court as follows:

**Defendant Yoo, in his Declaration sworn to under penalty of perjury, dated September 21, 2021, made intentional misrepresentations to the Court:**

(a) that Flower Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, February 27, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Cha took photographs of said songs being performed and displayed at Flower Karaoke;

(b) that Musicbox KTV and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gin Sang Meo Ri Geu Nyeo; Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 27, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Cha took photographs of said songs being performed and displayed at Musicbox KTV;

(c) that Sagwa Namoo and its owner infringed upon Elohim's exclusive copyrights pertaining to the song – Love Attack – because, on February 28, 2018, he personally visited and witnessed said song being performed and displayed and that he and/or Defendant Cha took photographs of said song being performed and displayed at Sagwa Namoo; and

(d) that Open Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 28, 2018, he personally visited and witnessed said songs being performed and displayed and that he

and/or Defendant Cha took photographs of said songs being performed and displayed at Open Karaoke.

**Defendant Yoo, in his Declaration sworn to under penalty of perjury, dated September 21, 2021 and transmitted on June 23, 2023, made intentional misrepresentations to the Court:**

(a) that Flower Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, February 27, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Cha took photographs of said songs being performed and displayed at Flower Karaoke;

(b) that Musicbox KTV and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gin Sang Meo Ri Geu Nyeo; Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 27, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Cha took photographs of said songs being performed and displayed at Musicbox KTV;

(c) that Sagwa Namoo and its owner infringed upon Elohim's exclusive copyrights pertaining to the song – Love Attack – because, on February 28, 2018, he personally visited and witnessed said song being performed and displayed and that he and/or Defendant Cha took photographs of said song being performed and displayed at Sagwa Namoo; and

(d) that Open Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 28, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Cha took photographs of said songs being performed and displayed at Open Karaoke.

**The RICO Defendants' Ongoing Fraudulent Scheme**

156.    The RICO Defendants' fraudulent conduct of demanding copyright licensing fees is still ongoing, as Defendant Cha and Defendant Yoo, under the name of Elohim, have been making fraudulent public announcements through the media, including Korean newspaper and radio channel, that are being circulated throughout the United States, and sending numerous letters threatening lawsuits, economic harm, and unfavorable economic consequences to Plaintiffs.

157.    On January 23, 2024, the United States District Court for the Southern District of New York issued a final judgment in connection with the Remaining 7 Songs on which Elohim prevailed in the SDNY Action.

158.    Shortly after the judgment was issued, Defendant Yoo, on or about February 7, 2024, contacted the Korea Daily, a Korean newspaper company, circulating newspapers, both in paper and electronic formats, in the United States, and made false and misleading statements to a reporter, named Min Hye Kang ("Ms. Kang").

159.    Defendant Yoo made false and misleading statements to Ms. Kang that in the SDNY Action, the Enterprise prevailed, with full victory, on its copyright infringement lawsuit, and the defendants, which included the SDNY Action Plaintiffs, were hit with a tremendous amount of judgment for their infringing activities.

160.    Defendant Yoo made false and misleading statements to Ms. Kang that in the SDNY Action, the Court issued an Order requiring the defendants, which included the SDNY Action Plaintiffs, to pay the Enterprise's attorneys' fees in the amount of $500,000.00 and monthly copyright licensing fees.

161.    On February 8, 2024, Ms. Kang published an article regarding the SDNY Action and its outcome based on the false and misleading statements made by Defendant Yoo to Ms. Kang.

162.    Said article was titled "Elohim USA wins big on song copyright lawsuit against karaoke bars in NY and NJ."

163.    The February 8, 2024 article provides, in relevant part, that:

Elohim USA announced that on February 8, a dispute over copyright fees for seven popular K-pop songs was resolved last December.

Elohim sued over 60 venues that had been refusing to settle since 2014.

The SDNY Action ended with Elohim's victory, and the defendants in the SDNY Action were hit with a substantial amount of judgment.

Additionally, Elohim is awarded, and defendants are required to pay, $500,000.00 in Elohim's attorneys' fees and a monthly fee for the use of karaoke machines.

Elohim claimed that it owns copyrights to 17,000 songs.

Nam Hyun Yoo, the CEO of Elohim for the Eastern United States Operation, stated that he plans to send notice letters this month to all other karaoke establishments to warn them, and if they do not pay copyright licensing fees, then there is no other option but to resort to legal proceedings.

164.    Defendant Yoo's statements were false and misleading in that he did not mention the fact that the 18 Dismissed Songs were dismissed with prejudice due to Elohim's failure to

prove copyright ownership and that the 18 Dismissed Songs were dismissed based on the RICO Defendants' own admissions.

165.    Defendant Yoo's statements were false and misleading in that as of February 8, 2024, the United States District Court for the Southern District of New York had not even issued a decision on Elohim's motion for attorneys' fees and costs.

166.    In fact, Elohim's motion for attorneys' fees and costs was filed on February 6, 2024, just 1 day prior to Defendant Yoo making false and misleading statements to Ms. Kang, and the Court in SDNY Action outright denied Elohim's motion for attorneys' fees and costs in its Opinion and Order on Fees and Costs, dated April 29, 2024.

167.    Defendant Yoo's statements were false and misleading in that the Court in the SDNY Action never issued an Order or judgment requiring the defendants, which included the SDNY Action Plaintiffs, to pay monthly copyright licensing fees.

168.    Defendant Yoo made these false and misleading statements to the Korea Daily for the purpose of inducing or instilling fear of economic harm and unfavorable economic consequences upon the karaoke establishments and the owners thereof, including Plaintiffs.

169.    Defendant Yoo made these false and misleading statements for the purpose of inducing or instilling fear of lawsuits being filed against Plaintiffs and other various karaoke establishments.

170.    Defendant Yoo made these false and misleading statements for the purpose of inducing Plaintiffs and other various karaoke establishments in New York and New Jersey to pay purported copyright licensing fees.

171.    The newspaper article was in fact circulated throughout New York and New Jersey, as the Korea Daily newspapers have been widely circulating in the Korean-American community in New York and New Jersey.

172.    On February 25, 2024, Defendant Yoo repeatedly called the karaoke establishment of Eelang, demanded copyright licensing fees for unspecified thousands of songs, and made threats of economic harm, litigation, impoundment of karaoke machines, and permanent closure of Eelang's business operation.

173.    In fear of facing economic harm, lawsuit, impoundment of karaoke machines, and permanent closure of Eelang's business operation, on February 26, 2024, Eelang, through its owner, Plaintiff Mi Suk Cho, sent a check in the amount of $300.00 to Elohim's New York Office, located at 162-10 Crocheron Ave., 2nd Floor, #E, Flushing, NY 11358.

174.    Subsequently, in mid-March, Defendant Yoo once again contacted Eelang and demanded an additional payment of $500.00, but this time, Eelang and Plaintiff Mi Suk Cho refused to remit additional $500.00.

175.    Defendant Yoo, under the name of Elohim, sent a letter, or caused a letter to be sent, dated April 19, 2024, to Plaintiffs herein stating that:

> In the SDNY Action, Elohim prevailed, and defendants were ordered to pay $3,500.00 to $10,500.00, respectively.  In addition, Elohim made applications to the Court for an additional $30,000.00 to $40,000.00 in compensation from defendants and the attorneys' fees incurred by Elohim, and those applications are currently pending before the Court.
>
> Based on the decision issued by SDNY Action, all bars and karaokes are required to pay copyright licensing fees to Elohim.

Contrary to your understanding that because Elohim prevailed only on 7 songs, Elohim owns copyrights to only the 7 songs that it prevailed on, Elohim does in fact own exclusive copyrights to approximately 5,000 songs.  Therefore, your business establishment must pay either monthly or annual copyright licensing fees for those 5,000 songs.

In the event that your business establishment fails to make copyright licensing fees, please be advised that Elohim will commence a second copyright infringement lawsuit against your business establishment.

Although Elohim did not want to file lawsuits, the karaoke establishments in New York refused to recognize Elohim's copyright ownership, hired attorneys, listened to attorneys' wrong advice, fought against Elohim's lawsuit, and ultimately lost in the SDNY Action.

Due to the SDNY Action and the trial that took place, the karaoke establishments in New York ended up paying tens of thousands of dollars in legal costs and tens of thousands of dollars for the damages Elohim sustained.  Additionally, the karaoke establishments in New York announced through the press that they will file a lawsuit against Elohim for the 18 songs that were dismissed.  It is such a crazy and shameful announcement!

Please contact us upon receipt of this letter.  In the event that you fail to contact us, please be advised that we will take legal action once again.

176.    The April 19, 2024 letter was signed by Defendant Yoo as the CEO of Elohim for the Eastern United States Operation.

177.    On May 13, 2024, Defendant Cha made a public announcement, via AM 1660, a commercial AM radio station that broadcasts to the New York metropolitan areas, claiming that Elohim owns exclusive copyrights to thousands of songs, and the SDNY Action involved only a fraction of those songs; thus, the owners of the Korean karaoke establishments in New York must acknowledge Elohim's copyright ownership and pay copyright licensing fees to Elohim.

178.    During the May 13, 2024 public announcement, Defendant Cha further claimed that if the owners of the karaoke establishments sue Elohim and Defendant Cha in connection with the 18 Dismissed Songs, then those owners will face devastating economic consequences, as Elohim will make an issue out of other songs that were not part of the SDNY Action and those owners would have to incur additional attorneys' fees, which will cause financial loss for those owners.

179.    Defendant Yoo, under the name of Elohim, once again sent a letter, or caused a letter to be sent, dated August 16, 2024, to Plaintiffs stating that:

> In the SDNY Action, Elohim prevailed, and defendants were ordered to pay $3,500.00 to $10,500.00, respectively. In addition, Elohim made applications to the Court for an additional $30,000.00 to $40,000.00 in compensation from defendants and the attorneys' fees incurred by Elohim, and they are currently pending before the Court.
>
> Based on the decision issued by SDNY Action, all bars and karaokes are required to pay copyright licensing fees to Elohim.
>
> Contrary to your understanding that because Elohim prevailed only on 7 songs, Elohim owns copyrights to only the 7 songs that it prevailed on, Elohim does in fact own exclusive copyrights to approximately 5,000 songs. Therefore, your

business establishment must pay either monthly or annual copyright licensing fees for those 5,000 songs.

In the event that your business establishment fails to make copyright licensing fees, please be advised that Elohim will commence a second copyright infringement lawsuit against your business establishment.

Although Elohim did not want to file lawsuits, the karaoke establishments in New York refused to recognize Elohim's copyright ownership, hired attorneys, listened to attorneys' wrong advice, fought against Elohim's lawsuit, and ultimately lost in the SDNY Action.

Due to the SDNY Action and the trial that took place, the karaoke establishments in New York ended up paying tens of thousands of dollars in legal costs and tens of thousands of dollars for the damages Elohim sustained.  Additionally, the karaoke establishments in New York announced through the press that they will file a lawsuit against Elohim for the 18 songs that were dismissed.  It is such a crazy and shameful announcement!

We previously sent a letter, dated April 19, 2024, but we still have not received any response to date.

Please contact us upon receipt of this letter.  In the event that you fail to contact us, please be advised that we will take legal action once again.

180.    The August 16, 2024 letter was signed by Defendant Yoo as the CEO of Elohim for the Eastern United States Operation.

181.    On or about August 23, 2024, Defendant Yoo personally came to the karaoke establishment of All In, with several unknown individuals, and demanded purported copyright

licensing fees for unspecified thousands of songs with threats of economic harm, lawsuit, impoundment of karaoke machines, and permanent closure of All In's business operation.

182.     During the period February 2024 through August 2024, Defendant Yoo either called or personally visited Plaintiffs' karaoke establishments and demanded copyright licensing fees with threats of economic harm, lawsuit, impoundment of karaoke machines, and permanent closure of business operation.

183.     Defendant Cha, under the name of Elohim, sent a letter, or caused a letter to be sent, dated December 20, 2024, to Plaintiffs stating that:

> "Elohim sent demand letters on April 19, 2024 and August 16, 2024 advising that you are required to pay copyright license fees (performance & display rights) for your karaoke establishment pursuant to the Court's Judgment in *Elohim EPF USA, Inc. v. 162 D & Y Corp. d/b/a Flower Karaoke, et al*. (S.D.N.Y. Case No. 1-19-cv-02431) (the "Action"), but to date you have ignored the demands.  This letter is Elohim's third and final demand.  If I do not hear from you by close of business on January 22, 2024, Elohim will file new litigation to enforce its copyrights."

184.     The Court in SDNY Action never issued a judgment requiring Plaintiffs to pay licensing fees to Elohim, nor did the Court grant Elohim right to collect copyright licensing fees. Rather, the Court in SDNY Action issued a judgment requiring defendants to make payment for the judgment sum in the amount of $3,500.00, $7,000.00, or $10,500.00 per defendant, respectively, for the Remaining 7 Songs on which Elohim prevailed.

185.     Additionally, at no point did Elohim in the SDNY Action make an application for an additional $30,000.00 to $40,000.00 compensation from defendants.

186.    Elohim's application for attorneys' fees and costs was outright denied by the Court in the SDNY Action.

187.    These false and misleading statements were made for the purpose of creating or instilling fear of economic harm to Plaintiffs.

188.    These false and misleading statements were made for the purpose of inducing Plaintiff to pay purported copyright licensing fees to the RICO Defendants.

189.    As such, Defendants' fraudulent scheme is still ongoing in the New York metropolitan areas.[3]

## FIRST CAUSE OF ACTION
### (Federal Civil RICO, 18 U.S.C. § 1962[c])

190.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

191.    The RICO Defendants, using the Enterprise as a "vehicle," violated RICO, and Plaintiffs were injured as a result.

192.    At all relevant times, each Plaintiff is a person capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

193.    At all relevant times, each RICO Defendant is a person capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

194.    At all relevant times, the Enterprise is a person capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

---

[3] The Second Circuit long has "interpreted [pattern of racketeering activity] to mean 'multiple racketeering predicates – which can be part of a single 'scheme' – that are related and that amount to, or threaten the likelihood of continued criminal activity.'" *See, e.g., United States v. Reifler*, 446 F.3d 65, 91 (2d Cir.2006) (quoting *United States v. Coiro*, 922 F.2d 1008, 1016 [2d Cir.1991]); *see also United States v. Daidone*, 471 F.3d 371, 374–75 (2d Cir.2006).

195.    Each RICO Defendant violated 18 U.S.C. § 1962(c) by the acts described in the preceding paragraphs, and as further described below.

196.    **The "Enterprise."** Elohim, which is a formal legal entity, constitutes a RICO enterprise (the "**Enterprise**") for the common and continuing purpose described herein within the meaning of 18 U.S.C. § 1961(4).[4]

197.    The Enterprise, which is a formal corporate entity, was formed on September 13, 2013, for the purpose of collecting purported copyright licensing fees from various bars, clubs, and karaoke establishments in the United States for use of the songs to which the Enterprise allegedly own exclusive copyright.

198.    Since its formation in 2013, the Enterprise has been engaged in the affairs of sending multiple letters to, and commencing lawsuits against, various bars, clubs, and karaoke establishments across the United States demanding payment of the purported copyright licensing fees.

199.    The Enterprise was, and still is, a formal ongoing organization, as the RICO Defendants, under the name of the Enterprise, have been continuously sending letters to Plaintiffs claiming that Plaintiffs are required to pay copyright licensing fees for unspecified thousands of songs that the Enterprise allegedly owns exclusive copyright to date.

200.    The Enterprise was, and still is, a formal ongoing organization, as the RICO Defendants, using the Enterprise as a "vehicle," have been filing lawsuits against various karaoke establishments across the nation claiming copyright infringements.

---

[4] *See First Capital Asset Management, Inc. v. Satinwood, Inc*., 385 F.3d 159, 173 (2d Cir. 2004) ("RICO requirements are most easily satisfied when the enterprise is a formal legal entity."); *see also* 18 U.S.C. § 1961(4) (The RICO statute defines an "enterprise" as "include[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.").

201.    The RICO Defendants continuously used the Enterprise as a "vehicle" for their shared common objective to extort money from various bars, clubs, and karaoke establishments by claiming that Elohim owns exclusive copyrights to unspecified thousands of songs.

202.    The Enterprise is separate and apart from the RICO Defendants, as the Enterprise is a formal entity that is being used as a "vehicle" by the RICO Defendants to commit the pattern of racketeering activities described in this Complaint.

203.    The Enterprise is separate and apart from the alleged pattern of racketeering activities, as the Enterprise is a formal entity that exists even without the alleged pattern of racketeering activities committed by the RICO Defendants using the Enterprise as a "vehicle."

204.    Each of the RICO Defendants participated in the operation and/or management of the Enterprise as described in this Complaint.

205.    At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c).

206.    **The "RICO Defendants."** Defendant Cha, who is the Chairman and CEO of the Enterprise, constitutes RICO Person separate and distinct from the Enterprise.[5]

207.    Defendant Yoo, who is the CEO of the Enterprise's Eastern United States Operation, constitutes RICO Person separate and distinct from the Enterprise.[6]

---

[5] *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more "separateness" than that.").

[6] *Id*. ("an employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids any "person" unlawfully to conduct an "enterprise," particularly when the statute explicitly defines "person" to include "any individual… capable of holding a legal or beneficial interest in property," and defines "enterprise" to include a "corporation." 18 U.S.C. §§ 1961[3], [4]. And,… the employee and the corporation are different "persons," even where the employee is the corporation's sole owner.").

208.    Defendant Cha and Defendant Yoo are RICO Persons (the "RICO Defendants") that conducted, and still conduct, the affairs of the Enterprise, separate and distinct from the Enterprise, and that they were, and still are, separate culpable parties.[7]

209.    The RICO Defendants conducted, and still conduct, the Enterprise's affairs through an unlawful RICO pattern of racketeering activities described herein, and they use the Enterprise as a "vehicle" to commit fraud, extortion, and other predicate acts described in this Complaint, upon Plaintiffs and other various karaoke establishments in California, New York, and New Jersey for their own financial gains.

210.    The RICO Defendants functioned, and still function, as a continuing unit with an ascertainable structure, and each of them participated in the operation and management of the Enterprise by overseeing and coordinating the commission of multiple acts of racketeering as described herein.[8]

211.    **"Pattern of Racketeering Activity."** The RICO Defendants, each of whom are persons employed by, or associated with, the Enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the affairs of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c).  The racketeering activity was made possible by the RICO Defendants' regular and repeated use of the

---

[7] *Id*. at 164 (RICO both protects a legitimate "enterprise" from those who would use unlawful acts to victimize it, *United States v. Turkette*, 452 U.S. 576, 591 [1981], and also protects the public from those who would unlawfully use an "enterprise" (whether legitimate or illegitimate), as a "vehicle" through which "unlawful… activity is committed." *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 [1994].  A corporate employee who conducts the corporation's affairs through an unlawful RICO "pattern… of activity," 18 U.S.C. § 1962[c], uses that corporation as a "vehicle" whether he is, or is not, its sole owner.).

[8] *See Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) (In this Circuit, the "operation or management" test typically has proven to be a relatively low hurdle for plaintiffs to clear at the pleading stage.).

facilities and services of the Enterprise that claims to be an exclusive copyright holder of thousands of famous Korean songs in the United States.

212.    The pattern of racketeering activity, which was conducted by the RICO Defendants, is separate from the Enterprise, as the RICO Defendants use the Enterprise as a "vehicle" to commit the pattern of racketeering activities described herein. *See Turkette*, 452 U.S. at 583.

213.    Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged below.

214.    The RICO Defendants each committed at least two such acts or else aided and abetted such acts.[9]

215.    The alleged predicate acts are related to each other as part of a common plan to extort money from Plaintiffs using the Enterprise as a "vehicle" to achieve the RICO Defendants' common scheme or artifice.

216.    The acts of racketeering were not isolated, but rather the acts of the RICO Defendants were related in that they had the same or similar purposes and results, participants, victims, and methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

217.    At all relevant times material to this Complaint, the Enterprise was engaged in interstate and foreign commerce and in an industry that affects interstate and foreign commerce, as the Enterprise claimed, and still claims, itself to be the exclusive copyright holder and administrator for thousands of songs in the United States and Canada.

---

[9] *See Cofacredit, S.A. v. Windsor Plumbing Supply Co*., 187 F.3d 229, 242 (2d Cir. 1999) (a "pattern of racketeering activity" consists of "at least two [predicate] acts of racketeering activity" committed in a ten-year period, 18 U.S.C. § 1961[5], which amount to or pose a threat of continued criminal activity.").

218.    The RICO Defendants executed, and still execute, a multi-faceted, extortionate scheme that has included not only intimidating of Plaintiffs, but also included manufacturing of causes of action and evidence, bringing the frivolous SDNY Action, and making false and misleading statements to the U.S. District Court for the Southern District of New York and the media, all for the purpose of coercing Plaintiffs into paying the money to which Elohim is not entitled.

219.    As described herein, the RICO Defendants have engineered a wide-ranging scheme to extort money from Plaintiffs based on false and misleading statements, dunning letters, phone calls, personal visits, frivolous lawsuits, public announcements, and ongoing harassment and disruptions of Plaintiffs' business operations, and they have demanded the payment of purported copyright licensing fees without even specifying the songs to which the Enterprise allegedly owned exclusive copyrights, all with the intent and effect of causing a reasonable fear of economic harm or loss on the part of Plaintiffs.

220.    As described herein, the RICO Defendants personally visited the SDNY Action Plaintiffs' karaoke establishments prior to filing the SDNY Action in order to manufacture causes of action and evidence against the SDNY Action Plaintiffs and relied on that false evidence in the SDNY Action with the intent and effect of causing a reasonable fear of economic harm or loss on the part of the SDNY Action Plaintiffs.

221.    As described herein, Defendant Yoo personally visited both the SDNY Action Plaintiffs and the Non-SDNY Action Plaintiffs' karaoke establishments shortly after the filing of the SDNY Action to extort money with the intent and effect of causing a reasonable fear of economic harm or loss on the part of Plaintiffs.

222.    As described herein, the RICO Defendants repeatedly filed, or caused to be filed, multiple Declarations sworn to under penalty of perjury, containing false and misleading statements with the U.S. District Court for the Southern District of New York in the SDNY Action.

223.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

224.    **Predicate Act: Extortion under the Hobbs Act, 18 U.S.C. § 1951.**  18 U.S.C. § 1951 provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or "attempts or conspires so do to," or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.[10]

225.    Defendant Cha and Defendant Yoo committed indictable offenses under the Hobbs Act in that from March 2017 until the present, on multiple occasions as described above, they have attempted to extort money from Plaintiffs by seeking to instill fear of consequences more unpalatable than making the desired payments.[11]

226.    Defendant Cha and Defendant Yoo knowingly and willfully created or instilled fear of economic harm, or used or exploited existing fear of economic harm, with specific purpose of inducing Plaintiffs to part with their property.

---

[10] "The Hobbs Act proscribes attempted extortion." *Chevron Corp. v. Donziger*, 871 F.Supp.2d 229, 248 (S.D.N.Y. 2012).

[11] The fact that the RICO Defendants have not succeeded in obtaining the desired payoff is immaterial to the question whether the plaintiff sufficiently has alleged Hobbs Act extortion as a RICO predicate act. *See, e.g., United States v. Salerno*, 868 F.2d 524, 530–31 (2d Cir.1989) (evidence sufficient to warrant conviction of predicate Hobbs Act offense in RICO prosecution despite lack of evidence that payments made or fear actually instilled where evidence supported finding that attempt was made to obtain payments by instilling fear).

227.    That is, Defendant Cha and Defendant Yoo, from March 2017 until the present, sent numerous letters threatening economic harm and/or unfavorable economic consequences if the desired payments were not made.

228.    Defendant Cha, by sending, or causing to be sent, the March 23, 2017 letter to Plaintiffs, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter contained the statements that copyright infringement is a criminal conduct and cease and desist means "Order Suspending [recipient's] Business Operation."  Defendant Cha further knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter contained the statements that the Enterprise recovered $105,000.00, $75,000.00, and $65,000.00 in the lawsuits where the Enterprise initially claimed $18,000.00, $15,000.00, and $15,000.00, respectively, and therefore, a settlement is a better option for the recipient.[12]

229.    The March 23, 2017 letter did not even specify the songs to which the Enterprise claimed to have exclusive copyrights.  Instead, said letter simply demanded payment of purported copyright licensing fees for unspecified thousands of songs allegedly owned by the Enterprise. Said letter further stated that if the desired payments are not made, the recipient will face a judgment in tens of thousands of dollars and an Order Suspending Business Operation.

230.    Defendant Cha sent, or caused to be sent, the March 23, 2017 letter with specific intent to extort money from, and to create or instill fear of economic harm to, Plaintiffs.

231.    Upon receipt of the March 23, 2017 letter, Plaintiffs reasonably feared for their economic harm and permanent closure of their karaoke establishments.

---

[12] The Second Circuit has stated that the Hobbs Act "does not limit the definition of extortion to those circumstances in which property is obtained through the wrongful use of fear created by implicit or explicit threats, but instead leaves open the cause of the fear." *United States v. Abelis*, 146 F.3d 73, 83 (2d Cir.1998).

232.    Defendant Cha and Defendant Yoo, by sending, or causing to be sent, the August 1, 2017 letter to Plaintiffs, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter contained the statement that the Enterprise will inflict treble damages if the desired payments were not made.

233.    Defendant Cha and Defendant Yoo, by sending, or causing to be sent, the August 1, 2017 letter to Plaintiffs, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter contained the statement "[i]f you have been sued in the past, you should already know the costs of defending such a lawsuit are enormous."

234.    The August 1, 2017 letter did not even specify the songs to which the Enterprise claimed to have exclusive copyrights.  Instead, said letter simply demanded payment of purported copyright licensing fees for unspecified thousands of songs allegedly owned by the Enterprise. Said letter further states that if the desired payments are not made, then the Enterprise will inflict, and the recipient will face, treble damages in tens of thousands of dollars and enormous costs of defending a lawsuit.

235.    Each of the August 1, 2017 letters sent to Plaintiffs were accompanied by the Contact Information page stating that:

> **<u>Head Office</u>**
> David Cha – C.E.O.
> 317 W. La Babra Blvd., #200
> La Habra, CA 90631
> Tel.: (626) 872-6070  (213) 446-2991
> Email: info@alohimepfusa.com
>
> **New York Office:**
> Mr. Nam Hyun Yoo – President
> East Coast Operation
> 162-10 Crocheron Ave., 2nd Floor
> Suite E
> Flushing, New York 11358
> Tel.: (718) 888-8259

Email: info@elohimepfusa.com

236.    The August 1, 2017 letter directed the recipients to contact Elohim's office at (718) 888-8259, the phone number listed for Defendant Yoo at the New York Office.

237.    Defendant Cha and Defendant Yoo sent, or caused to be sent, the August 1, 2017 letter with specific intent to extort money from, and to create or instill fear of economic harm to, Plaintiffs.

238.    Upon receipt of the August 1, 2017 letter, Plaintiffs reasonably feared for their economic harm and permanent closure of their karaoke establishments.

239.    Defendant Cha and Defendant Yoo, by sending, or causing to be sent, the April 16, 2018 letter to Plaintiffs, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter contained the statement that the Enterprise has filed 6 different infringement lawsuits against more than 60 karaoke bars, private room salons, and open karaoke bars, combined, since 2014 in Southern and Northern California, the Enterprise has won all these lawsuits, and the defendants in those lawsuits ended up with tremendous financial loss by paying settlements on past infringements and their attorneys' fees.

240.    Defendant Cha and Defendant Yoo, by sending, or causing to be sent, the April 16, 2018 letter to Plaintiffs, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter explicitly stated that the defendants in the California actions received wrong advice or opinion from their attorneys and that they could have saved tens of thousands of dollars by paying small money for their past and current license fees to the Enterprise.

241.    Defendant Cha and Defendant Yoo, by sending, or causing to be sent, the April 16, 2018 letter to Plaintiffs, knowingly and willfully created and instilled fear of economic harm to Plaintiffs in that said letter explicitly states "[p]lease ask yourself whether legal lawsuit is your

best solution or find an amicable solution with Elohim is the smart and better choice…" (*sic*) and that said letter specifically directed the recipients not to listen to their attorneys.

242.    The April 16, 2018 letter did not specify the songs to which the Enterprise claimed to have exclusive copyrights.  Instead, said letter simply demanded payment of purported copyright licensing fees for unspecified thousands of songs allegedly owned by the Enterprise.  Said letter further stated that the defendants in those lawsuits ended up with tremendous financial loss by paying settlements on past infringements and their attorneys' fees and that they listened to their attorneys' wrong opinion, and it specifically directed the recipients not to listen to their attorneys.

243.    Each of the April 16, 2018 letters sent to Plaintiffs listed Defendant Cha as the CEO of the Enterprise and Defendant Yoo as the President of Elohim for the New York and East Coast Operation and directed the recipients to contact either the California headquarters or the New York Office.

244.    Defendant Cha and Defendant Yoo sent, or caused to be sent, the April 16, 2018 letter with specific intent to extort money from, and to create or instill fear of economic harm to, Plaintiffs.

245.    Upon receipt of the April 16, 2018 letter, Plaintiffs reasonably feared for their economic harm and permanent closure of their karaoke establishments.

246.    Defendant Cha, by sending, or causing to be sent, the May 16, 2018 letter to Plaintiffs, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter contained the statement that "[d]uring the course of that lawsuit the Federal District Court Judge determined, among other things, that: 1) Elohim was the sub-publisher of the Elohim Compositions; b) Elohim's U.S. copyright were valid; c) the karaoke defendants had infringed on Elohim's copyrights (based on the evidence which Elohim submitted, which is the same type of

evidence Elohim has already collected regarding your establishment); d) the karaoke defendants were obligated to pay statutory damages to Elohim for infringement; and e) none of the various defenses asserted by the karaoke defendants had any merit."

247.    Defendant Cha sent, or caused to be sent, the May 16, 2018 letter with specific intent to extort money from, and to create or instill fear of economic harm to, Plaintiffs.

248.    Upon receipt of the May 16, 2018 letter, Plaintiffs reasonably feared for their economic harm and permanent closure of their karaoke establishments in that said letter claimed that the Enterprise was in possession of the evidence that it has collected regarding the recipient's karaoke establishment and that none of the various defenses asserted by the karaoke defendants in the California Action had any merit.

249.    The May 16, 2018 letter did not even specify the songs to which the Enterprise claimed to have exclusive copyright, but it demanded that Plaintiffs make the desired payments to the Enterprise, and if the desired payments are not made, then the Enterprise will commence a lawsuit.

250.    At the time Defendant Yoo visited each of Plaintiffs' karaoke establishments, on April 25, 2019, April 26, 2019, and April 27, 2019, respectively, Defendant Yoo represented that the Enterprise was the exclusive copyright owner of the 25 claimed songs, that there is a pending copyright infringement lawsuit for the 25 songs, and that if Plaintiffs do not cooperate, the Enterprise will soon get a judgment in millions of dollars against them, and the Court will issue an Order suspending their business operations and the impoundment of the karaoke machines.

251.    Defendant Yoo, during those visits, made threats of the impoundment of the karaoke machines out of Plaintiffs' karaoke establishments if the desired payments were not made.

252.    Defendant Yoo, by visiting Plaintiffs' karaoke establishments and stating that if the desired payments are not made, then they will face a judgment in millions of dollars, knowingly and willfully created or instilled fear of economic harm, or used or exploited existing fear of economic harm, with specific purpose of inducing Plaintiffs to part with their property.

253.    Defendant Yoo made the personal visits and threats of economic harm to Plaintiffs with specific intent to extort money from, and to create or instill fear of economic harm to, Plaintiffs.

254.    Plaintiffs reasonably feared for their economic harm in that Defendant Yoo repeatedly stated that unless the desired payments are made, they will soon face a judgment in millions of dollars and the impoundment of the karaoke machines, which will force them to permanently close their business operations.

255.    On or about February 7, 2024, Defendant Yoo made false and misleading statements to Ms. Kang, a Korea Daily reporter, that in the SDNY Action, the Enterprise prevailed, with full victory, on its copyright infringement lawsuit, and the defendants in the SDNY Action, including the SDNY Action Plaintiffs, were hit with a large amount of judgment for their infringing activities.

256.    On or about February 7, 2024, Defendant Yoo made false and misleading statements to Ms. Kang that in the SDNY Action, the Court issued an Order requiring the defendants, including the SDNY Action Plaintiffs, to pay the Enterprise attorneys' fees in the amount of $500,000.00 and monthly copyright licensing fees.

257.    On February 8, 2024, Ms. Kang published an article regarding the SDNY Action and its outcome based on the false and misleading statements made by Defendant Yoo to Ms. Kang.

258.    The February 8, 2024 article provides, in relevant part, that:

Elohim USA announced that on February 8, a dispute over copyright fees for seven popular K-pop songs was resolved last December.

Elohim sued over 60 venues that had been refusing to settle since 2014.

The SDNY Action ended with Elohim's victory, and the defendants in the SDNY Action were hit with a substantial amount of judgment.

Additionally, Elohim is awarded, and defendants are required to pay, $500,000.00 in Elohim's attorneys' fees and a monthly fee for the use of karaoke machines.

Elohim claimed that it owns copyrights to 17,000 songs.

Nam Hyun Yoo, the CEO of Elohim for the Eastern United States Operation, stated that he plans to send notice letters this month to all other karaoke establishments to warn them, and if they do not pay copyright licensing fees, then there is no other option but to resort to legal proceedings.

259. Defendant Yoo's statements were false and misleading in that he did not mention the fact that 18 out of the 25 claimed songs were dismissed with prejudice due to Elohim's failure to prove copyright ownership and that said 18 songs were dismissed based on the Enterprise's own admissions.

260. Defendant Yoo's statements were false and misleading in that as of February 8, 2024, the United States District Court for the Southern District of New York had not even issued a decision on Elohim's motion for attorneys' fees and costs.

261. In fact, Elohim's motion for attorneys' fees and costs was filed on February 6, 2024, just 1 day prior to Defendant Yoo making false and misleading statements to Ms. Kang, and the Court in SDNY Action outright denied Elohim's motion for attorneys' fees and costs in its Opinion and Order on Fees and Costs, dated April 29, 2024.

262.    Defendant Yoo's statements were false and misleading in that the Court in the SDNY Action never issued an Order or judgment requiring the defendants, including the SDNY Action Plaintiffs, to pay monthly copyright licensing fees.

263.    Defendant Yoo made these false and misleading statements to the Korea Daily with specific intent to create or instill fear of economic harm to Plaintiffs.

264.    Defendant Yoo made these false and misleading statements to the Korea Daily for the purpose of inducing Plaintiffs to part with their property.

265.    Defendant Yoo, by inducing said article to be published in the Korea Daily newspaper, knowingly and willfully created or instilled fear of economic harm with specific purpose of inducing Plaintiffs to pay purported copyright licensing fees for unspecified thousands of songs.

266.    On February 8, 2024, Defendant Yoo, by transmitting, or causing to be transmitted, the false and misleading statements that the defendants in the SDNY Action, which included the SDNY Action Plaintiffs, were required to pay the Enterprise's attorneys' fees in the amount of $500,000.00 and monthly licensing fees to the Enterprise, knowingly and willfully created or instilled fear of economic harm to Plaintiffs believing that the Court in the SDNY Action did in fact issue an Order requiring the SDNY Action Plaintiffs to pay the Enterprise's attorneys' fees in the amount of $500,000.00 and monthly copyright licensing fees.

267.    When Plaintiffs read the newspaper article regarding the SDNY Action and its outcome, Plaintiffs reasonably feared for their economic harm and negative consequences of their karaoke establishments being forced to shut down permanently.

268.    Defendant Yoo, by sending, or causing to be sent, the April 19, 2024 letter under the name of the Enterprise, knowingly and willfully created or instilled fear of economic harm to

Plaintiffs in that said letter falsely claimed that based on the decision issued in the SDNY Action, all bars and karaoke establishments are required to pay copyright licensing fees for unspecified 5,000 songs to the Enterprise and, if Plaintiffs fail to make the desired payments, the Enterprise will commence a second copyright infringement lawsuit.

269.    Defendant Yoo, by sending, or causing to be sent, the April 19, 2024 letter under the name of the Enterprise, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter claimed that because the karaoke establishments in New York hired attorneys, listened to attorneys' wrong advice, and fought against the Enterprise's lawsuit in the SDNY Action, they ultimately lost and ended up paying tens of thousands of dollars in legal costs and tens of thousands of dollars for the damages the Enterprise sustained.

270.    Defendant Yoo, by sending, or causing to be sent, the April 19, 2024 letter under the name of the Enterprise, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter criticized the Association's announcement that they will file a lawsuit against the Enterprise for the 18 Dismissed Songs as a crazy and shameful announcement.

271.    Defendant Yoo sent, or caused to be sent, the April 19, 2024 letter to Plaintiffs with specific intent to extort money from, and to create or instill fear of economic harm to, Plaintiffs.

272.    Upon receipt of the April 19, 2024 letter, Plaintiffs reasonably feared for their economic harm and permanent closure of their business operations.

273.    Defendant Cha, by making the May 13, 2024 public announcement, via AM 1660, under the name of the Enterprise, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said public announcement reemphasized that the Enterprise owns exclusive copyrights to unspecified thousands of songs, the SDNY Action involved only a fraction of those songs, the owners of karaoke establishments in New York must acknowledge the

Enterprise's copyright ownership and pay copyright licensing fees, and if the owners of the karaoke establishments elect to sue the Enterprise and Defendant Cha in connection with the 18 Dismissed Songs, they will face devastating economic consequences, as the Enterprise could, and will, make an issue out of other songs that were not part of the SDNY Action, and those owners would have to incur additional attorneys' fees, which will cause financial loss for those owners.

274.    Defendant Cha made the May 13, 2024 public announcement with specific intent to create or instill fear of economic harm to Plaintiffs and other various karaoke establishments in New York.

275.    Defendant Cha made the May 13, 2024 public announcement with specific intent to induce Plaintiffs to part with their property.

276.    Defendant Yoo, by sending, or causing to be sent, the August 16, 2024 letter, under the name of the Enterprise, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter falsely claimed that based on the decision issued in the SDNY Action, all bars and karaoke establishments are required to pay copyright licensing fees for unspecified 5,000 songs to the Enterprise and, if Plaintiffs fail to make the desired payments, the Enterprise will commence a second copyright infringement lawsuit.

277.    Defendant Yoo, by sending, or causing to be sent, the August 16, 2024 letter, under the name of the Enterprise, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter claimed that because the karaoke establishments in New York hired attorneys, listened to attorneys' wrong advice, and fought against the Enterprise's lawsuit in the SDNY Action, they ultimately lost and ended up paying tens of thousands of dollars in legal costs and tens of thousands of dollars for the damages the Enterprise sustained.

70

278.    Defendant Yoo, by sending, or causing to be sent, the August 16, 2024 letter, under the name of the Enterprise, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter criticized the Association's announcement that they will file a lawsuit against the Enterprise for the 18 Dismissed Songs as a crazy and shameful announcement.

279.    Defendant Yoo sent, or caused to be sent, the August 16, 2024 letter with specific intent to extort money from, and to create or instill fear of economic harm to, Plaintiffs.

280.    Defendant Yoo sent, or caused to be sent, the August 16, 2024 letter with specific intent to induce Plaintiffs to part with their property.

281.    Upon receipt of the August 16, 2024 letter, Plaintiffs reasonably feared for their economic harm and permanent closure of their business operations.

282.    When Defendant Yoo, during the period February 2024 through August 2024, either personally visited or made phone calls to Plaintiffs' karaoke establishments and demanded copyright licensing fees for unspecified thousands of songs, Defendant Yoo knowingly and willfully created or instilled fear of economic harm to Plaintiffs.

283.    These visits and phone calls were made with specific intent to extort money from, and to create or instill fear of economic harm to, Plaintiffs.

284.    When Defendant Yoo visited, and made phone calls to, Plaintiffs' karaoke establishments, Plaintiffs reasonably feared for their economic harm and/or negative economic consequences.

285.    Defendant Cha, by sending, or causing to be sent, the December 20, 2024 letter, under the name of the Enterprise, knowingly and willfully created or instilled fear of economic harm to Plaintiffs in that said letter stated that if Plaintiffs do not agree to make the desired

payments, then the Enterprise will file new litigation to enforce its alleged copyrights to unspecified 5,000 songs.

286.    Defendant Cha sent, or caused to be sent, the December 20, 2024 letter with specific intent to extort money from, and to create or instill fear of economic harm to, Plaintiffs.

287.    Defendant Cha sent, or caused to be sent, the December 20, 2024 letter with specific intent to induce Plaintiffs to part with their property.

288.    Upon receipt of the December 20, 2024 letter, Plaintiffs reasonably feared for their economic harm and permanent closure of their business operations.

289.    The Court in SDNY Action never issued a judgment requiring Plaintiffs to pay licensing fees to the Enterprise, nor did the Court grant the Enterprise right to collect copyright licensing fees.  Rather, the Court in SDNY Action issued a judgment requiring defendants to make payment for the judgment sum in the amount of $3,500.00, $7,000.00, or $10,500.00 per defendant, respectively, for the Remaining 7 Songs on which Elohim prevailed.

290.    Defendant Cha and Defendant Yoo, by sending multiple dunning letters seeking purported copyright licensing fees for unspecified thousands of songs and by personally visiting Plaintiffs' karaoke establishments, attempted to extort undeserved sums of money from Plaintiffs.

291.    Defendant Cha, by making the May 13, 2024 public announcement via radio station, claiming that the owners of karaoke establishments in New York must acknowledge the Enterprise's copyright ownership and pay copyright licensing fees, attempted to extort undeserved sums of money from Plaintiffs.

292.    Defendant Cha and Defendant Yoo used wrongful means for wrongful objective with the intent to obtain money to which Defendant Cha and Defendant Yoo were not entitled, and

they knew that they were not entitled to receive the purported copyright licensing fees for unspecified thousands of songs.

293.    Defendant Cha and Defendant Yoo's actions were, and still are, intended to induce fear in Plaintiffs that the RICO Defendants will, among other things: a) commence a lawsuit if Plaintiffs do not voluntarily make payment for purported copyright licensing fees for unspecified thousands of songs; b) cause economic harm or loss if Plaintiffs do not voluntarily make payment for purported copyright licensing fees for unspecified thousands of songs; c) cause the suspension of Plaintiffs' business operations; d) cause the impoundment or destruction of the karaoke machines from Plaintiffs' karaoke establishments; and e) commence a second lawsuit for copyright infringement if Plaintiffs do not voluntarily make payment for purported copyright licensing fees for unspecified thousands of songs. These actions, as described herein, have created a reasonable fear of harm on the part of Plaintiffs, including fear of economic harm or loss.

294.    Accordingly, Defendant Cha and Defendant Yoo have unlawfully obstructed, delayed, and affected – and attempted to obstruct, delay, and affect – commerce as that term is defined in 18 U.S.C. § 1951, and the movement of articles and commodities in such commerce, by extortion, as that term is defined in 18 U.S.C. § 1951, in that Defendant Cha and Defendant Yoo attempted to induce Plaintiffs to consent to relinquish property through the wrongful use of actual and threatened force, violence, and fear, including fear of economic harm.

295.    Defendant Cha and Defendant Yoo's conduct affected interstate commerce by extortion and/or attempted extortion, as they were conducting the affairs of the Enterprise, which is a California corporation, and interstate mailing was used, or they knew or foresaw that interstate mailing will be used, in furtherance of their scheme to extort money from Plaintiffs.

296.    Defendant Cha and Defendant Yoo attempted to extort property from each Plaintiff by inducing, by wrongful means, fear for their economic harm, the impoundment or destruction of the karaoke machines, and permanent closure of their business operations.

297.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

298.    **Predicate Act: Extortion under New York Penal Law in Violation of PL §§ 110.00, 155.05(2)(e), 155.42.**  Defendant Cha and Defendant Yoo intended to deprive Plaintiffs of money or to appropriate the same to themselves.  They wrongfully took or obtained, or attempted to take or obtain, money from each Plaintiff.

299.    As described above, from March 2017 until the present, Defendant Cha, under the name of the Enterprise, sent, or caused to be sent, numerous letters to Plaintiffs claiming exclusive copyright ownership to unspecified thousands of Korean songs.  Each of these letters contained threats of litigation and economic harm to Plaintiffs if the desired payments were not made.

300.    As described above, from March 2017 until the present, Defendant Yoo, under the name of the Enterprise, sent, or caused to be sent, numerous letters to Plaintiffs claiming exclusive copyright to unspecified thousands of Korean songs.  Each of these letters contained threats of litigation and economic harm to Plaintiffs if the desired payments were not made.

301.    As described above, Defendant Cha sent, or caused to be sent, the March 23, 2017 letter containing the threat of an Order Suspending Business Operation.

302.    As described above, Defendant Yoo, as the Enterprise's CEO for the Eastern United States Operation, personally visited each of Plaintiffs' karaoke establishments and demanded payment of copyright licensing fees.

303.    Defendant Yoo, when he visited Plaintiffs' karaoke establishments, threatened to cause economic harm to Plaintiffs, as he threatened them with an Order suspending their business operations and the impoundment or destruction of the karaoke machines.

304.    Defendant Yoo, during those visits, made threats of litigation to the Non-SDNY Action Plaintiffs.

305.    Defendant Cha and Defendant Yoo wrongfully attempted to take money from Plaintiffs by compelling or inducing Plaintiffs to deliver money to either Defendant Cha, Defendant Yoo, or the Enterprise.

306.    They did so by attempting to induce fear that, if money is not delivered, they would cause damage to Plaintiffs' property and/or to perform any other act calculated to harm Plaintiffs' businesses and/or financial conditions.

307.    Defendant Cha and Defendant Yoo's wrongful attempts to appropriate Plaintiffs' property by instilling fear that if the property is not delivered, Defendant Cha and Defendant Yoo would perform an act calculated to harm Plaintiffs materially with respect to their business, property, and financial condition violate New York Penal Law §§ 110.00, 155.05(2)(e), 155.42.

308.    Defendant Cha and Yoo's extortions are chargeable under New York law and punishable by imprisonment for more than one year.  As such, they constitute predicate racketeering acts under 18 U.S.C. § 1961.[13]

309.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

---

[13] *See* 18 U.S.C. § 1961(1) (defining "racketeering activity" to include "any act of threat involving… extortion… which is chargeable under State law and punishable by imprisonment for more than one year," or "any act which is indictable" under 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), or 1951 (extortion); *see also DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("'racketeering activity' is broadly defined to encompass a wide variety of state and federal offense including… extortion."); *Chanayil v. Gulati*, 169 F.3d 168, 170 (2d Cir. 1999) ("Predicate acts for purposes of RICO include… mail fraud [and] wire fraud…").

310.    **Predicate Act: Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises in Violation of 18 U.S.C. § 1952.**  18 U.S.C. § 1952 provides that "[w]hoever travels interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to… distribute the proceeds of any unlawful activity… or otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity" "shall be fined under this title, imprisoned not more than 5 years, or both." 18 U.S.C. § 1952.

311.    As used in this action, "unlawful activity" includes "extortion," bribery, or arson in violation of the laws of the State in which committed or of the United States.

312.    Defendant Cha committed acts constituting indictable offenses under 18 U.S.C. § 1952 in that he traveled, and still travels, to and from California and New York with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the unlawful activity of extortion in aid of the Enterprise, as described above.

313.    Defendant Cha traveled to New York from California on multiple occasions for the purpose of collecting purported copyright licensing fees for the songs to which the Enterprise never owned exclusive copyright.

314.    Defendant Cha traveled to New York from California on multiple occasions for the purpose of extorting money to which the Enterprise were never entitled from Plaintiffs.

315.    Defendant Cha traveled to New York from California on multiple occasions for the purpose of manufacturing causes of action and evidence in connection with the 18 Dismissed Songs.

316.    In February 2018, Defendant Cha traveled to New York from California in aid of the Enterprise in order to manufacture causes of action and evidence in connection with the 18

Dismissed Songs by visiting various karaoke establishments in New York and New Jersey for frivolous copyright infringement lawsuits filed in the SDNY Action and NJ Action.

317.    In fact, on February 27, 2018, Defendant Cha personally visited Flower Karaoke, located at 162-05 Crocheron Ave., Flushing, NY 11358, with Defendant Yoo, in aid of the Enterprise, in order to manufacture causes of action for Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack, the songs to which the Enterprise never owned exclusive copyright, by playing such songs through the karaoke machine and taking photographs of the lyrics displayed on the display monitor.

318.    On February 27, 2018, Defendant Cha personally visited Musicbox KTV, located at 40-15 150th Street, Flushing, NY 11354, with Defendant Yoo, in aid of the Enterprise, in order to manufacture causes of action for Gin Sang Meo Ri Geu Nyeo, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack, the songs to which the Enterprise never owned exclusive copyright, by playing such songs through the karaoke machine and taking photographs of the lyrics displayed on the display monitor.

319.    On February 28, 2018, Defendant Cha personally visited Sagwa Namoo, located at 162-07 Depot Road, Flushing, NY 11358, with Defendant Yoo, in aid of the Enterprise, in order to manufacture a cause of action for Love Attack, the song to which the Enterprise never owned exclusive copyright, by playing such song through the karaoke machine and taking photographs of the lyrics displayed on the display monitor.

320.    On February 28, 2018, Defendant Cha personally visited Open Karaoke, located at 40-20 149th Place, Flushing, NY 11354, with Defendant Yoo, in aid of the Enterprise, in order to manufacture causes of action for Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack, the songs to which the Enterprise never owned exclusive copyright, by

playing such songs through the karaoke machine and taking photographs of the lyrics displayed on the display monitor.

321.    In his written Declaration sworn to under penalty of perjury, dated January 18, 2023, Defendant Cha stated that he revisited the defendants' establishments in July 2019 to determine whether the following songs were still playable on defendants' karaoke machines – Jeong Sin I Na Gat Eot Na Bwa, My Boy, Gudaewa Hamke, Neomanul Nukimyeo, Hoe Sang, Gil Eul Geot Da Ga, Gin Sang Meo Ri Geu Nyeo, Sa Rang Ha Go Sip Eo, and Love Attack – the songs to which the Enterprise never owned exclusive copyright.

322.    Defendant Cha and Defendant Yoo did in fact use the photographs taken at the karaoke establishments of the SDNY Action Plaintiffs as evidence in the SDNY Action and submitted them to the U.S. District Court for the Southern District of New York on June 23, 2023, along with their written Declarations sworn to under penalty of perjury.

323.    Further, Defendant Cha and Defendant Yoo used the mail in interstate, with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the unlawful activity of extortion in aid of the Enterprise as described above.

324.    Defendant Cha, under the name of the Enterprise, disseminated, or caused to be disseminated, multiple letters to Plaintiffs using interstate mail in order to extort money from Plaintiffs.

325.    Defendant Yoo, under the name of the Enterprise, disseminated, or caused to disseminated, multiple letters to Plaintiffs using interstate mail in order to extort money from Plaintiffs.

326.    Defendant Cha, under the name of the Enterprise, sent, or caused to be sent, numerous letters, dated from March 23, 2017 to December 20, 2024, to Plaintiffs demanding

payment of copyright licensing fees for unspecified thousands of songs in his attempt to extort money from Plaintiffs.

327.    Defendant Yoo, under the name of the Enterprise, sent, or caused to be sent, numerous letters, dated from March 23, 2017 to December 20, 2024, to Plaintiffs demanding payment of copyright licensing fees for unspecified thousands of songs in his attempt to extort money from Plaintiffs.

328.    Each of these letters were sent under the name of the Enterprise and directed Plaintiffs to contact either Defendant Cha or Defendant Yoo for payment of purported copyright licensing fees.

329.    These letters were sent for the purpose of extorting money from Plaintiffs with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the Enterprise's unlawful activity of extortion, as described in detail above.

330.    These letters were sent for the purpose of defrauding Plaintiffs with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the Enterprise's unlawful activity of mail fraud, as described in detail below.

331.    The April 19, 2024 and August 16, 2024 letters, which were sent, or caused to be sent, by Defendant Yoo, and the December 20, 2014 letter, which was sent, or caused to be sent, by Defendant Cha, not only included false information, but are also fraudulent in nature, as the U.S. District Court for the Southern District of New York in the SDNY Action never issued a judgment directing payment of the purported copyright licensing fees to the Enterprise.

332.    The Court in the SDNY Action dismissed the 18 Dismissed Songs out of the 25 claimed songs and issued a judgment in connection with the Remaining 7 Songs only, and nowhere

in the judgment issued in the SDNY Action did the Court mention anything about payment of copyright licensing fees.  It simply enjoined the defendants in the SDNY Action from publicly performing the Remaining 7 Songs on which the Enterprise prevailed.

333.    Plaintiffs permanently deleted all 25 claimed songs, including the 18 Dismissed Songs, from their karaoke machines as of April 2019, and those deleted 25 songs cannot be reinstated or revived to Plaintiffs' karaoke machines.  As such, Plaintiffs have not been able to use the 18 Dismissed Songs since April 2019 until the present despite the fact that the Enterprise did not possess any rights to, and Plaintiffs had the right to use, the 18 Dismissed Songs.

334.    Despite that, Defendant Cha and Defendant Yoo, under the name of the Enterprise, continuously send these letters falsely claiming that Plaintiffs are required to pay copyright licensing fees for unspecified thousands of songs to the Enterprise based on the judgment issued in the SDNY Action.

335.    These letters that were sent, or caused to be sent, by Defendant Cha and Defendant Yoo do not even specify the songs to which the Enterprise claims exclusive copyright; instead, the letters contain threats of litigation and economic harm, as usual.

336.    These letters were sent by Defendant Cha and Defendant Yoo for the purpose of extorting money from Plaintiffs with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the Enterprise's unlawful activity of extortion, as described in detail above.

337.    In fact, the Court in the SDNY Action in its Opinion and Order on Fees and Costs, denying the Enterprise's Motion for Attorneys' Fees and Costs, explicitly stated in connection with the various letters that were sent to Plaintiffs and other karaoke establishments in 2017 and 2018 that "[a] recipient of these letters would not know which songs Elohim claimed to own or what

songs where claimed to be unlawfully performed and displayed at the recipient's establishment. The 2017 letters appear to predate any of Elohim's visits to defendants' establishments for the purpose of determining whether defendants had infringed Elohim's performance rights. The letters did not give their recipients intelligent notice of any purportedly infringing conduct of any reason to believe that Elohim had a meritorious claim for copyright infringement. The admonition in the letter of April 16, 2018 that the recipient should 'not listen' to attorney['s] advice or rely on licenses from ASCAP or BMI gives the communication the quality of a shakedown."

338.    Thus, Defendant Cha further committed indictable offenses under 18 U.S.C. § 1952 in that he used the mail in interstate, or reasonably foresaw that the mail in interstate will be used, and disseminated multiple letters, containing false and misleading information, with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the Enterprise's unlawful activity of extortion and fraud.

339.    Defendant Yoo further committed indictable offenses under 18 U.S.C. § 1952 in that he used the mail in interstate, or reasonably foresaw that the mail in interstate will be used, and disseminated multiple letters, containing false and misleading information, with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the Enterprise's unlawful activity of extortion and fraud.

340.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

341.    **Predicate Act: Mail Fraud in Violation of 18 U.S.C. § 1341.**  As described herein, the RICO Defendants engaged in a wide-ranging scheme or artifice to: a) extort money from Plaintiffs; b) defraud various courts of law in the California Action, NJ Action, and SDNY Action and the greater public concerning karaoke establishments' obligation to pay copyright licensing

fees to the Enterprise by way of public announcements via newspapers and radio channels; c) make threats of economic harm by multiple dunning letters, personal visits, and phone calls; d) manufacture causes of action and evidence in connection with the 18 Dismissed Songs; and e) make multiple false and misleading statements to the United States District Court for the Southern District of New York throughout the SDNY Action.  The ultimate objective of the RICO Defendants' scheme or artifice was and still is to coerce Plaintiffs into making payment for purported copyright licensing fees for unspecified thousands of songs that will directly benefit the organizational RICO Defendants.

342.    In furtherance of that scheme, the RICO Defendants mailed, or caused to be mailed, by means of mail in interstate or foreign commerce, multiple false and misleading statements to Plaintiffs in order to obtain money from Plaintiffs, or that the RICO Defendants have reasonably foreseen that interstate mailing would be used for making those false and misleading statements.

343.    The RICO Defendants in furtherance of their scheme, and as described herein, mailed, or caused to be mailed, several letters in interstate or foreign commerce, by inducing those letters to be placed in any post office or authorized depository, or deposited or caused to be deposited those letters to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the followings: (a) the March 23, 2017 letter sent, or caused to be sent, by Defendant Cha, containing false and misleading information stating that "cease and desist" means an Order suspending the recipient's business operations and that Plaintiffs were required to pay copyright licensing fees to the Enterprise because the Enterprise owned exclusive copyrights to unspecified thousands of songs.  These statements were false and misleading in that "cease and desist" does not mean an Order suspending Plaintiffs' business operations, and by mischaracterizing the meaning of cease and desist, Defendants Cha attempted to defraud Plaintiffs

and coerce Plaintiffs into paying purported copyright licensing fees. The statements contained in the March 23, 2017 letter were false and misleading in that the Court in the California Action found that the Enterprise utterly failed to prove a valid chain of title and Elohim's exclusive copyright ownership to 3,304 out of the 3,341 claimed songs. The March 23, 2017 letter did not specify the songs to which the Enterprise owned exclusive copyright, and the Enterprise did not have any proof of infringing activities by Plaintiffs, and it had no right to collect any purported copyright licensing fees because this letter pre-dated the RICO Defendants' personal visits to the SDNY Action Plaintiffs' karaoke establishments on February 27 and February 28, 2018; (b) The August 1, 2017 letter, sent, or caused to be sent, by Defendant Cha and Defendant Yoo, containing false and misleading information stating that the Enterprise was in possession of evidence that Plaintiffs' establishments have caused to play for the public the musical sound recordings of artists that Elohim represent without obtaining any licensing to do so. This statement was false and misleading in that this letter pre-dated the RICO Defendants' personal visits to the SDNY Action Plaintiffs' karaoke establishments on February 27 and February 28, 2018, and the Enterprise had no proof of any infringing activities by Plaintiffs and no right to collect any purported copyright licensing fees; (c) The April 16, 2018 letter, sent, or caused to be sent, by Defendant Cha and Defendant Yoo, containing false and misleading information stating that ASCAP, BMI, SESAC, and other collection organizations have no rights for lyrics, that the Enterprise is the only entity that has the display rights for Plaintiffs' establishments, and that Plaintiffs have been infringing upon the Enterprise's rights since the inception of Plaintiffs' business operations, and urging Plaintiffs not to listen to their attorneys. These statements were false and misleading in that the Enterprise never possessed any rights to the 18 Dismissed Songs, and that ASCAP, BMI, and SESAC do in fact manage, administer, and license copyrights of famous Korean songs in the

United States.  By making these false and misleading statements to Plaintiffs, the RICO Defendants attempted to defraud and trick Plaintiffs into paying purported copyright licensing fees for unspecified thousands of Korean songs to which the Enterprise could not, cannot, show copyright; and (d) the May 16, 2018 letter, sent, or caused to be sent, by Defendant Cha, containing false and misleading information stating that in the California Action (Case No.: 2:14-cv-02496 BRO [Ex]), the Federal District Court Judge determined, among other things, that: Elohim was the sub-publisher of the Elohim Compositions; Elohim's U.S. copyrights were valid; the karaoke defendants had infringed on Elohim's copyrights based on the evidence which Elohim submitted, which is the same type of evidence Elohim has already collected regarding your establishment; the karaoke defendants were obligated to pay statutory damages to Elohim for infringement; and none of the various defenses asserted by the karaoke defendants had any merit.  These statements were false and misleading in that in the California Action, some of the defendants entered into a settlement agreement in the innocent belief that the Enterprise actually owned exclusive copyright to all 3,341 claimed songs, and the Court in the California Action, on October 1, 2015, found that the Enterprise utterly failed to possess any evidence to show its exclusive copyright ownership for 3,304 out of the 3,341 claimed songs.  The Enterprise proffered a copyright registration for only 37 songs out of 3,341 claimed songs, and the defendants in the California Action elected not to fully litigate the matter and entered into a settlement with respect to said 37 songs.  It is striking, however, that said 37 songs included 8 songs – "Go Hae," "Gudaewa Hamke," "Neomanul Nukimyeo," "My Boy," "Gil Eul Geot Da Ga," "Gin Sang Meo Ri Geu Nyeo," "Sa Rang Ha Go Sip Eo," and "Love Attack" – that were dismissed in the SDNY Action with prejudice for Elohim's failure to establish a valid chain of title.  Additionally, the October 1, 2015 decision in the California Action was issued as part of both sides' highly contested motion and cross-motion for

summary judgment practices, and the statements contained in the May 16, 2018 letter stating that none of the various defenses asserted by the karaoke defendants had any merit is false and misleading, as the Enterprise's motion for summary judgment on all 3,304 claimed songs were granted in part and denied in part denying summary judgment with respect to the 3,304 songs that the Enterprise claimed to have exclusive copyrights.  In the California Action, the defendants raised multiple evidentiary objections and arguments pertaining to Elohim's failure to proffer evidence to prove a valid chain of title and exclusive copyright ownership of all 3,341 songs, and the defendants succeeded in establishing that Elohim did not have any proof to show that it owned exclusive copyright to 3,304 out of the 3,341 claimed songs.

344.    The March 23, 2017, August 1, 2017, April 16, 2018, and May 16, 2018 letters did not specify the songs to which the Enterprise alleged owned exclusive copyrights.

345.    However, upon receipt of said letters, and relying on the representations and statements contained in said letters, Plaintiffs materially changed their position by forming the Association in order to collectively respond to the Enterprise's dunning letters demanding payment of purported copyright licensing fees for unspecified thousands of songs allegedly owned by the Enterprise.

346.    Plaintiffs, who are members of the Association, met periodically to determine to what songs the Enterprise was claiming exclusive copyright and discussed how they could resolve the issues raised by the Enterprise in its multiple letters sent to Plaintiffs.

347.    Relying on the representations and statements contained in said letters, Plaintiffs retained an attorney to ascertain the songs to which the Enterprise claimed exclusive copyright, and through the attorney, they demanded a copy of the contracts/agreements that the Enterprise

claimed to give itself the right to certain Korean songs and a list of the songs to which the Enterprise claimed copyright.

348.    Despite Plaintiffs' multiple requests made on September 12, 2017, September 26, 2017, November 28, 2017, and June 4, 2018, through their then attorney, neither Elohim nor Defendant Cha and Defendant Yoo provided the list of the songs to which Elohim claimed copyright and continuously demanded money for purported copyright licensing fees until the SDNY Action was filed in March 2019.

349.    In fact, the Court in the SDNY Action in its Opinion and Order on Fees and Costs (1:19-cv-02431-PKC-SDA; Hon. P. Kevin Castel, U.S.D.J., presiding), denying Elohim's Motion for Attorneys' Fees and Costs, explicitly stated in connection with the various letters that were sent to the SDNY Action Plaintiffs and other karaoke establishments in 2017 and 2018 that "[a] recipient of these letters would not know which songs Elohim claimed to own or what songs were claimed to be unlawfully performed and displayed at the recipient's establishment.  The 2017 letters appear to predate any of Elohim's visits to defendants' establishments for the purpose of determining whether defendants had infringed Elohim's performance rights.  The letters did not give their recipients intelligent notice of any purportedly infringing conduct or any reason to believe that Elohim had a meritorious claim for copyright infringement.  The admonition in the letter of April 16, 2018 that the recipient should 'not listen' to attorney['s] advice or rely on licenses from ASCAP or BMI gives the communication the quality of a shakedown."

350.    These acts were done intentionally and knowingly in furtherance of their master plan to defraud and trick Plaintiffs into paying the money to which the Enterprise was not entitled for their own financial benefits with the specific intent to advance the RICO Defendants' scheme or artifice described herein.

351.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

352.    **Predicate Act: Fraud by Wire, Radio, Television in Violation of 18 U.S.C. § 1343.** 18 U.S.C. § 1343 provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1343.

353.    As described herein, the RICO Defendants engaged in a wide-ranging scheme or artifice to: a) extort money from Plaintiffs; b) defraud various courts of law in the California Action, NJ Action, and SDNY Action and the greater public concerning karaoke establishments' obligation to pay copyright licensing fees to the Enterprise by way of public announcements via newspapers and radio channels; c) make threats of economic harm by multiple dunning letters, personal visits, and phone calls; d) manufacture causes of action and evidence in connection with the 18 Dismissed Songs; and e) make multiple false and misleading statements to the United States District Court for the Southern District of New York throughout the SDNY Action.  The ultimate objective of the RICO Defendants' scheme or artifice was and still is to coerce Plaintiffs into making payment for purported copyright licensing fees for unspecified thousands of songs that will directly benefit the organizational RICO Defendants.

354.    In furtherance of that scheme, the RICO Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, multiple false

and misleading statements to the U.S. District Court for the Southern District of New York on multiple occasions in the frivolous SDNY Action.

355.    Throughout the SDNY Action, the RICO Defendants, using the Enterprise as a "vehicle," transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, the Enterprise's Complaint, dated and transmitted on March 19, 2019, First Amended Complaint, dated and transmitted on January 20, 2020, and Second Amended Complaint, dated and transmitted on October 30, 2020, via interstate wire, to wit: ECF, which contained the following false and misleading statements:

    (a) "pursuant to the terms of the Subpublishing agreements (or in certain specified instances, the publishing agreements) between Elohim and the copyright holders, Elohim registered" the 18 Dismissed Songs with the United States Copyright Office;

    (b) "Elohim is the exclusive owner of the United States copyright in and to the" 18 Dismissed Song;

    (c) "[d]uring all periods relevant to this action, Elohim has had and continues to have the exclusive rights in the copyright under the Copyright Act to the" 18 Dismissed Songs, "including a) the exclusive right to reproduce the Registered Compositions in copies or phonorecords…; b) the exclusive right to prepare derivative works based on the Registered Compositions…; c) the exclusive right to distribute copies or phonorecords of the Registered Compositions in the public by sale, rental, lease or lending…; d) the exclusive right to perform the Registered Compositions publicly…; and e) the exclusive right to display the Registered Compositions publicly";

(d) "[w]ithin the past three years Defendants have, in the Karaoke Establishments, publicly performed and displayed and/or caused the public performance and display or, the Registered Compositions by means of karaoke machines, video monitors and sound system";

(e) Elohim "has not granted Defendants the right to publicly perform or publicly display any of the" 18 Dismissed Songs;

(f) "Defendants have known that their continued public performance and public display of each of the" 18 Dismissed Songs "constituted copyright infringement prior to the initiation of this action because Plaintiff sent cease and desist letters to Defendants";

(g) "[t]hus, despite Defendants' knowledge that they lacked authorization to publicly perform or publicly display the" 18 Dismissed Songs, "Defendants, knowingly, willfully and intentionally continued their extensive use of each of the" 18 Dismissed Songs "in their respective Karaoke Establishments and failed to pay Elohim for the right to publicly perform and publicly display each of the" 18 Dismissed Songs "as required by 18 U.S.C. §§ 106(4) and (5)";

(h) "Elohim is the copyright owner of the" 18 Dismissed Songs "and has public display of the" 18 Dismissed Songs "in the territory of the United States";

(i) "[s]ince the inception of the Karaoke Establishments, Defendants have publicly performed and publicly displayed, and/or caused or authorized the public performance and public display, of each of the" 18 Dismissed Songs "by means of one or more karaoke machines and through elaborate and expensive sound systems and video monitors. Each of the public performances and public

displays of the" 18 Dismissed Songs "has been conducted without a license or authorization from Plaintiff";

(j) "[t]hus, Defendants have knowingly and intentionally authorized, caused, and engaged in the unlicensed public performance and public display of each of the" 18 Dismissed Songs "in violation of Plaintiff's exclusive rights under the Copyright Act…"

(k) "[e]ach unauthorized public performance of each of the" 18 Dismissed Songs "constitutes a separate and distinct act of direct copyright infringement";

(l) "[e]ach unauthorized public display of each of the" "18 Dismissed Songs "constitutes a separate and distinct act of direct copyright infringement";

(m) "[t]he specific acts of copyright infringement alleged in this Complaint, as well as Defendants' entire course of conduct, have caused and are causing Plaintiff significant damage.    By continuing to provide unauthorized public performances and public displays of each of the" 18 Dismissed Songs "at their Karaoke Establishments, Defendants threaten to continue committing copyright infringement on essentially a daily basis.    Unless this Court restrains Defendants from committing further acts of copyright infringement, Plaintiff will suffer irreparable injury for which it has not adequate remedy at law";

(n) "Plaintiff also seeks an order under 17 U.S.C. § 503, directing the impoundment, destruction or other reasonable disposition of all infringing karaoke machines" (emphasis added to "impoundment," "destruction," and "disposition" of all infringing karaoke machines); and

(o) "[p]ursuant to 17 U.S.C. § 504(c), as a direct and proximate result of Defendants' direct infringement of Plaintiff's copyrights, Plaintiff is entitled to recover up to $150,000 in statutory damages for each of the Registered Compositions infringed. Alternatively, at Plaintiff's election, pursuant to 18 U.S.C. § 504(d), Plaintiff is entitled to its damages, including Defendants' profits from infringement, in connection with the Registered Compositions as will be proven at trial."

356. Defendant Cha transmitted, or caused to be transmitted, his written sworn Declaration, dated and transmitted on September 21, 2021, via interstate wire, to wit: ECF, which contained the following false and misleading statements:

(a) that Elohim is the exclusive copyright owner of Gin Sang Meo Ri Geu Nyeo, My Boy, Gudaewa Hamke, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack;

(b) that Flower Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 27, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Yoo took photographs of said songs being performed and displayed at Flower Karaoke;

(c) that Musicbox KTV and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gin Sang Meo Ri Geu Nyeo, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 27, 2018, he personally visited and witnessed said songs being performed and

displayed and that he and/or Defendant Yoo took photographs of said songs being

performed and displayed at Musicbox KTV;

(d)  that Sagwa Namoo and its owner infringed upon Elohim's exclusive copyrights

pertaining to the song – Love Attack – because, on February 28, 2018, he personally

visited and witnessed said song being performed and displayed and that he and/or

Defendant Yoo took photographs of said song being performed and displayed at

Sagwa Namoo;

(e)  that Open Karaoke and its owner infringed upon Elohim's exclusive copyrights

pertaining to the songs – Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha

Go Sip Eo, and Love Attack – because, on February 28, 2018, he personally visited

and witnessed said songs being performed and displayed and that he and/or

Defendant Yoo took photographs of said songs being performed and displayed at

Open Karaoke; and

(f)  that Elohim regularly enters into license agreement with third parties for the public

performance and/or public display of said songs.

357.    Defendant Cha transmitted, or caused to be transmitted, his written sworn

Declaration, dated and transmitted on December 3, 2021, via interstate wire, to wit: ECF, which

contained the following false and misleading statements:

(a)  that the SDNY Action involves defendants' unauthorized use of 25 songs that

Elohim exclusively administers in the United States; and

(b)  that Elohim exclusively administers in the United States the following registered

songs – Gin Sang Meo Ri Geu Nyeo, My Boy, Gudaewa Hamke, Neomanul

Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, Love Attack, Jeong Sin I Na Gat Eot Na Bwa, and Hoe Sang.

358.    Defendant Cha transmitted, or caused to be transmitted, his written sworn Declaration, dated and transmitted on July 22, 2022, via interstate wire, to wit: ECF, which contained the following false and misleading statements:

(a) that Elohim is the exclusive United States sub-publisher for the following registered songs in the United States and Canada – My Boy, Gudaewa Hamke, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Gin Sang Meo Ri Geu Nyeo, Sa Rang Ha Go Sip Eo, Love Attack, Jeong Sin I Na Gat Eot Na Bwa, and Hoe Sang.

359.    Defendant Cha transmitted, or caused to be transmitted, his written sworn Declaration, dated and transmitted on January 18, 2023, via interstate wire, to wit: ECF, which contained the following false and misleading statements:

(a) that Elohim is the exclusive United States sub-publisher for the following registered songs – Gin Sang Meo Ri Geu Nyeo, My Boy, Gudaewa Hamke, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, Love Attack, Jeong Sin I Na Gat Eot Na Bwa, and Hoe Sang;

(b) that he personally visited defendants' establishments between February 27 and 28, 2018;

(c) that after Elohim filed a complaint in the SDNY Action, he revisited the defendants' establishments in July 2019 to determine whether said songs were still playable on defendants' karaoke machines;

(d) that Elohim has never granted defendants a license to use said songs; and

(e) that defendants have never compensated Elohim for use of its registered songs.

360.    Defendant Cha transmitted, or caused to be transmitted, his written sworn Declaration, dated and transmitted on June 23, 2023, via interstate wire, to wit: ECF, which contained the following false and misleading statements:

(a) that Elohim is the exclusive United States sub-publisher of the songs – Gin Sang Meo Ri Geu Nyeo, My Boy, Gudaewa Hamke, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, Love Attack, Jeong Sin I Na Gat Eot Na Bwa, and Hoe Sang;

(b) that as the exclusive United States sub-publisher, Elohim has the exclusive right to license, administer (including the grant of all licenses) and collect all income earned in connection with said songs in the United States, including the right to license the performance of said songs, we well as the display of their lyrics;

(c) that the South Korean songwriters of said songs assigned the rights to administer their works in the United States and other foreign territories to Elohim;

(d) that Elohim regularly enters into license agreements with third parties for the public performance and/or public display of said songs;

(e) that Flower Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 27, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Yoo took photographs of said songs being performed and displayed at Flower Karaoke;

(f) that Musicbox KTV and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gin Gang Meo Ri Geu Nyeo, Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because on February

27, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Yoo took photographs of said songs being performed and displayed at Musicbox KTV;

(g) that Sagwa Namoo and its owner infringed upon Elohim's exclusive copyrights pertaining to the song – Love Attack – because, on February 28, 2018, he personally visited and witnessed said song being performed and displayed and that he and/or Defendant Yoo took photographs of said song being performed and displayed at Sagwa Namoo; and

(h) that Open Karaoke and its owner infringed upon Elohim's exclusive copyright pertaining to the songs – Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 28, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Yoo took photographs of said songs being performed and displayed at Open Karaoke.

361.    Defendant Yoo transmitted, or caused to be transmitted, his written sworn Declaration, dated and transmitted on September 21, 2021, via interstate wire, to wit: ECF, which contained the following false and misleading statements:

(a) that he was hired by Defendant Cha to inspect the SDNY Action Plaintiffs' karaoke establishments suspected of publicly performing and displaying the Enterprise's musical compositions without the Enterprise's authorization;

(b) that Flower Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, February 27, 2018, he personally visited and witnessed said songs

being performed and displayed and that he and/or Defendant Cha took photographs of said songs being performed and displayed at Flower Karaoke;

(c)  that Musicbox KTV and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gin Sang Meo Ri Geu Nyeo; Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 27, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Cha took photographs of said songs being performed and displayed at Musicbox KTV;

(d)  that Sagwa Namoo and its owner infringed upon Elohim's exclusive copyrights pertaining to the song – Love Attack – because, on February 28, 2018, he personally visited and witnessed said song being performed and displayed and that he and/or Defendant Cha took photographs of said song being performed and displayed at Sagwa Namoo; and

(e)  that Open Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 28, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Cha took photographs of said songs being performed and displayed at Open Karaoke.

362.  Defendant Yoo transmitted, or caused to be transmitted, his written sworn Declaration, dated September 21, 2021 and transmitted on June 23, 2023, via interstate wire, to wit: ECF, which contained the following false and misleading statements:

(a) that he was hired by Defendant Cha to inspect the SDNY Action Plaintiffs' karaoke establishments suspected of publicly performing and displaying the Enterprise's musical compositions without the Enterprise's authorization;

(b) that Flower Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, February 27, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Cha took photographs of said songs being performed and displayed at Flower Karaoke;

(c) that Musicbox KTV and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Gin Sang Meo Ri Geu Nyeo; Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 27, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or Defendant Cha took photographs of said songs being performed and displayed at Musicbox KTV;

(d) that Sagwa Namoo and its owner infringed upon Elohim's exclusive copyrights pertaining to the song – Love Attack – because, on February 28, 2018, he personally visited and witnessed said song being performed and displayed and that he and/or Defendant Cha took photographs of said song being performed and displayed at Sagwa Namoo; and

(e) that Open Karaoke and its owner infringed upon Elohim's exclusive copyrights pertaining to the songs – Neomanul Nukimyeo, Gil Eul Geot Da Ga, Sa Rang Ha Go Sip Eo, and Love Attack – because, on February 28, 2018, he personally visited and witnessed said songs being performed and displayed and that he and/or

Defendant Cha took photographs of said songs being performed and displayed at Open Karaoke.

363.    The Complaint, First Amended Complaint, and Second Amended Complaint were each signed by Elohim's then attorney, and said Complaints were filed by the office of Tesser Grossman, LLP, located in California, by the use of interstate wire, with the United States District Court for the Southern District of New York, located in Manhattan, New York.

364.    The sworn Declarations of the RICO Defendants were each signed by Defendant Cha, Defendant Yoo, and Defendant Park, and said Declarations were filed by the office of Tesser Grossman, LLP, the Enterprise's then attorney, located in California, by the use of interstate wire, with the United States District Court for the Southern District of New York, located in Manhattan, New York.

365.    The acts of the RICO Defendants set forth above were done with the knowledge that the use of the wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended, as the RICO Defendants voluntarily made the false and misleading statement in their multiple written Declarations sworn to under penalty of perjury, which were signed and filed with the United States District Court for the Southern District of New York in the SDNY Action.

366.    When these false and misleading statements were transmitted, or caused to be transmitted, to the United States District Court for the Southern District of New York and the SDNY Action Plaintiffs, the RICO Defendants knew that those statements were false and misleading.

367.    The RICO Defendants further caused these statements to be disseminated to the general public, to the media, and to the Non-SDNY Action Plaintiffs by sending out multiple

dunning letters containing threats of economic harm, visiting the SDNY Action Plaintiffs and Non-SDNY Action Plaintiffs' karaoke establishments, contacting the Korea Daily, causing or inducing an article to be published in the Korea Daily newspaper, and making public announcements through radio channels, with the intent that those statements be believed and that they form the basis for the Enterprise's collection of purported copyright licensing fees from Plaintiffs and other various karaoke establishments in New York.

368.    The RICO Defendants knowingly engaged in the aforementioned conduct with the intent to generate fear in Plaintiffs such that Plaintiffs would ultimately pay the RICO Defendants to cease their described conduct.

369.    The RICO Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to deceive and defraud Plaintiffs into paying the RICO Defendants. The RICO Defendants knowingly and intentionally prepared multiple Declarations, claiming that the Enterprise owned exclusive copyrights to the 18 Dismissed Songs, and then knowingly and with the intent to deceive the United States District Court for the Southern District of New York, Plaintiffs, and the general public, caused those Declarations and purported evidence to be filed under the pretense that the photographs attached to their Declarations are the evidence of the SDNY Action Plaintiffs' copyright infringement of the 18 Dismissed Songs.

370.    The RICO Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to coerce Plaintiffs into paying money to the RICO Defendants.

371.    The RICO Defendants carried out their scheme in different states, including, but not limited to, California, New York, and New Jersey, and could not have done so unless they used interstate wire.

372.    The RICO Defendants' conduct has been ongoing in several other jurisdictions – California, New York, and New Jersey – and in all those cases filed in California and New Jersey, all defendants ended up settling with the Enterprise due to the defendants' financial hardships funding for the litigations.

373.    The RICO Defendants colluded  with each other to initiate the SDNY Action fraudulently claiming that the Enterprise owned exclusive copyrights to the 18 Dismissed Songs in their belief that the defendants in the SDNY Action, like all other defendants in cases brought in other jurisdictions, would elect to settle the lawsuit and make payment for purported copyright licensing fees to the Enterprise instead of litigating the SDNY Action.

374.    These acts were done intentionally and knowingly in furtherance of their master plan to defraud Plaintiffs and extort money to which the Enterprise was not entitled from Plaintiffs for their own financial benefits with the specific intent to advance the RICO Defendants' scheme or artifice described herein.

375.    The statements contained in the Enterprise's Complaint, First Amended Complaint and Second Amended Complaint, and the RICO Defendants' written sworn Declarations, which were signed and filed, via interstate wire, with the United States District Court for the Southern District of New York, were relied upon by the United States District Court for the Southern District of New York, throughout the SDNY Action, by means of the Court's acceptance of the RICO Defendants' misrepresentations and omissions.

376.    On or about December 3, 2021, both the SDNY Action Plaintiffs and the Non-SDNY Action Plaintiffs discovered for the first time that the Enterprise did not possess exclusive copyright ownership of the First 9 Songs.

377.    On or about July 13, 2023, both the SDNY Action Plaintiffs and the Non-SDNY Action Plaintiffs discovered for the first time that the Enterprise did not possess exclusive copyright ownership of the Additional 9 Songs.

378.    As of July 13, 2023, both the SDNY Action Plaintiffs and the Non-SDNY Action Plaintiffs discovered that the Enterprise did not possess exclusive copyright ownership of 18 Dismissed Songs in the SDNY Action by way of the Enterprise's own admissions.

379.    Despite that, the RICO Defendants repeatedly transmitted, or caused to be transmitted, these false and misleading statements via interstate wire for the purpose of defrauding, and extorting money from, Plaintiffs.  These false and misleading statements were not only transmitted to the United States District Court for the Southern District of New York, but also to the SDNY Action Plaintiffs, and eventually to the Non-SDNY Action Plaintiffs.

380.    In furtherance of their master plan to defraud, and extort money from, Plaintiffs, the RICO Defendants communicated between themselves by the use of interstate wire, and these communications were typically transmitted via interstate wire (i.e., electronically via telephone and/or cellular phone).

381.    Each RICO Defendant possessed fraudulent intent to defraud, and extort money from, the SDNY Plaintiffs.

382.    Each RICO Defendant personally knew of, and participated in, the fraud and attempted extortion.

383.    Relying on the false and misleading representations made by the RICO Defendants, Plaintiffs permanently deleted all 25 claimed songs, including the 18 Dismissed Songs, from their karaoke machines as of April 2019, and those deleted 25 songs cannot be reinstated or revived to Plaintiffs' karaoke machines.  As such, Plaintiffs have not been able to use the 18 Dismissed Songs

since April 2019 until the present despite the fact that the Enterprise did not possess any rights to, and Plaintiffs had the right to use, the 18 Dismissed Songs.

384.    Relying on the false and misleading representations made by the RICO Defendants, the SDNY Action Plaintiffs, along with the Non-SDNY Action Plaintiffs, searched for and retained an attorney to represent them in connection with the multiple dunning letters and the SDNY Action.

385.    Relying on the false and misleading representations made by the RICO Defendants, the SDNY Action Plaintiffs and the Non-SDNY Action Plaintiffs collectively expended legal defense costs in connection with the multiple dunning letters and in defending the frivolous claims premised upon the 18 Dismissed Songs.  The RICO Defendants' false and misleading statements have caused Plaintiffs substantial damages.

386.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

387.    **Predicate Act: Obstruction of Justice in Violation of 18 U.S.C. § 1503.**  In a concerted effort to thwart the SDNY Action Plaintiffs' attempts to uncover the truth and to avoid the disclosure of the fact that the Enterprise never owned exclusive copyright to the 18 Dismissed Songs, the RICO Defendants have habitually filed, or caused to be filed, documents, including Declarations sworn to under penalty of perjury, that falsely represent that the Enterprise obtained exclusive copyright ownership from all original authors of the 18 Dismissed Songs and that the Enterprise was the exclusive copyright owner of the 18 Dismissed Songs.

388.    Throughout the SDNY Action, the SDNY Action Plaintiffs repeatedly requested that the RICO Defendants produce the existing copyright assignment documents from the original authors to the Enterprise pertaining to the 18 Dismissed Songs; however, the RICO Defendants

repeatedly refused to, or otherwise failed to, produce the copyright assignment documents that give the Enterprise exclusive copyright ownership of the 18 Dismissed Songs.

389.    By making these deliberate and strategic false representations in various documents, such as pleadings and Declarations sworn to under penalty of perjury, with full awareness of their consequences and with the specific intent to corruptly endeavor to influence, obstruct, and impede the due administration of justice, the RICO Defendants have committed multiple instances of obstruction of justice in violation of 18 U.S.C. § 1503.

390.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

391.    **Continuity of Conduct.**  The RICO Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured Plaintiffs, constituted a continuous course of conduct spanning a period from March 2017 until the present, which was intended to financially benefit themselves and damage Plaintiffs through false representations, fraud, deceit, attempted extortion, and other improper and unlawful means, including intimidating of Plaintiffs, manufacturing causes of action and evidence, filing the frivolous claims premised upon the 18 Dismissed Songs, and making false statements to the United States District Court for the Southern District of New York and the media, all for the purpose of coercing Plaintiffs into paying the money to which the Enterprise is not entitled.  Each of the RICO Defendants has engaged in multiple predicate acts, as described in this Complaint.  Therefore, the conduct of each of the RICO Defendants described herein constitutes a pattern of racketeering activities within the meaning of 18 U.S.C. §§ 1961(1) and (5).

392.    The RICO Defendants have conducted, and/or participated, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activities of

extortion, or attempted extortion, mail fraud, wire fraud, interstate and foreign travel or transportation in aid of racketeering enterprise, and use of the mail in interstate with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of the Enterprise's unlawful activities of extortion, or attempted extortion, mail fraud, and wire fraud, by sending numerous letters containing false and misleading statements and threats of litigation and unfavorable economic harms to Plaintiffs, filing the frivolous claims premised upon the 18 Dismissed Songs, making false and misleading statements to U.S. Court in their pleadings and sworn Declarations, transmitting, or causing to be transmitted, false and misleading statements by the use of interstate wire, making false and misleading statements to the media regarding the SDNY Action and the outcome of the SDNY Action, and personally visiting Plaintiffs' karaoke establishments on repeated occasions and demanding payment of purported copyright licensing fees, all for the purpose of extorting money to which the Enterprise was never entitled from Plaintiffs.

393.    The RICO Defendants purposefully conspired to, and did in fact, commit attempted extortion, mail fraud, wire fraud, interstate travel in aid of the Enterprise, and use of the mail in interstate with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of the Enterprise's unlawful activities of extortion, or attempted extortion, mail fraud, and wire fraud, during the period March 23, 2017 through the present in order to coerce Plaintiffs into paying money to the Enterprise.

394.    The described acts of racketeering by the RICO Defendants have been continuous. There was repeated conduct during a period of time beginning on March 23, 2017 and is still ongoing, and there is a threat of continuing criminal activity beyond the period during which the predicate acts were performed.

395.    But for Defendants' violations of 18 U.S.C. § 1962(c), Plaintiffs would not have incurred legal costs in the amount of $456,181.75 in connection with the multiple dunning letters, personal visits, and phone calls spanning from March 23, 2017 until the present and in defending the frivolous claims premised upon the 18 Dismissed Songs.

396.    But for Defendants' deceptive and fraudulent conduct and behavior described herein, Plaintiffs would not have incurred legal costs in the amount of $456,181.75 in connection with the multiple dunning letters, personal visits, and phone calls spanning from March 23, 2017 until the present and in defending the frivolous claims premised upon the 18 Dismissed Songs.

397.    Had Defendants not brought the frivolous claims premised upon the 18 Dismissed Songs to which the Enterprise never owned copyrights, Plaintiffs would not have incurred legal costs in the amount of $456,181.75.

398.    Had the RICO Defendants not attempted to extort money from Plaintiffs, Plaintiffs would not have incurred legal costs in the amount of $456,181.75.

399.    Had Defendant Cha not traveled interstate, from California to New York, to manufacture causes of action and evidence for use in the SDNY Action in connection with the 18 Dismissed Songs, Plaintiffs would not have incurred legal costs in the amount of $456,181.75 in defending the frivolous claims premised upon the 18 Dismissed Songs.

400.    Had the RICO Defendants not made false and misleading statements in their pleadings and sworn Declarations that the Enterprise owned exclusive copyrights to the 18 Dismissed Songs, Plaintiffs would not have incurred legal costs in the amount of $456,181.75 in defending the frivolous claims premised upon the 18 Dismissed Songs.

401.    Had the RICO Defendants not transmitted, or caused to be transmitted, the false and misleading statements, pertaining to the 18 Dismissed Songs, via interstate wire, Plaintiffs

would not have incurred legal costs in the amount of $456,181.75 in defending the frivolous claims premised upon the 18 Dismissed Songs.

402.    The injury to Plaintiffs was reasonably foreseeable or anticipated as a natural consequence of Defendants' conduct and behavior described herein because Defendants knew that in response to the frivolous claims premised upon the 18 Dismissed Songs, Plaintiffs would have had to incur a substantial amount of legal costs.

403.    Defendants' alleged conduct was, at the very least, a "substantial factor" in incurring the defense costs of $456,181.75, and this result was "reasonably foreseeable" by the RICO Defendants involved in the affairs of the Enterprise, as they all knew that the Enterprise did not possess copyright ownership of the 18 Dismissed Songs.

404.    As a direct, proximate, and reasonably foreseeable result of the RICO Defendants' fraudulent, deceptive activities, Plaintiffs have suffered, and continue to suffer, financial damages in the amount of $456,181.75.

405.    Plaintiffs have been damaged as a direct, proximate, and reasonably foreseeable result of the RICO Defendants' ongoing participation in, and management of, the Enterprise's affairs.

406.    The RICO Defendants' unlawful actions in violation of 18 U.S.C. § 1962(c) led directly to Plaintiffs' injury.

407.    The unlawful actions of the RICO Defendants, and each of them, have directly, illegally, and proximately caused, and continue to cause, injury to Plaintiffs in their business and property by reason of the RICO Defendants' violations of 18 U.S.C. § 1962(c).

408.    Plaintiffs seek an award of damages in compensation for, among other things, $456,181.75.

106

409.    Plaintiffs accordingly seek an award of three (3) times the damages they sustained, as well as punitive damages, and the recovery of reasonable attorneys' fees and costs, expenses, and disbursements incurred, and any other relief as authorized by statute.

## SECOND CAUSE OF ACTION
### (Conspiracy to Violate Federal Civil RICO, 18 U.S.C. § 1962[d])

410.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

411.    In violation of 18 U.S.C. § 1962(d), the RICO Defendants, and each of them, knowingly, willfully, and unlawfully conspired, confederated, and agreed to facilitate a scheme which included the operation or management of the Enterprise through a pattern of racketeering activities as alleged above.

412.    Defendant Cha, who was and still is the Chairman and CEO of the Enterprise, and Defendant Yoo, who was and still is the CEO of the Enterprise for the Eastern United States Operation, agreed to commit at least two predicate acts in furtherance of a pattern of racketeering activity in connection with the Enterprise for the purpose of extorting money and/or get a quick settlement from Plaintiffs, and if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity.

413.    The RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity.  This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

414.    The RICO Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

415.    Each RICO Defendant knew about and agreed to facilitate the Enterprise's scheme to obtain property from Plaintiffs.  Each RICO Defendant knew about and agreed to facilitate the Enterprise's scheme to damage, or cause damage to, Plaintiffs' businesses.  It was part of the conspiracy that the RICO Defendants would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including the acts of racketeering set forth in this Complaint.

416.    The conspiracy commenced at least as early as March 23, 2017 when Defendant Cha, under the name of the Enterprise, sent, or caused to be sent, the March 23, 2017 dunning letter, demanding purported copyright licensing fees for unspecified thousands of songs, to Plaintiffs.

417.    The conspiracy's purpose was to extort money from Plaintiffs and other various karaoke establishments in New York for the RICO Defendants' own financial benefits.

418.    As part of their conspiracy to extort money to which the Enterprise was not entitled from Plaintiffs, the RICO Defendants did in fact commit at least two predicate acts in furtherance of such conspiracy, and these acts in furtherance of the conspiracy included attempted extortion, mail fraud, wire fraud, travel in aid of the Enterprise, and use of the mail in interstate with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of the Enterprise's unlawful activities of extortion, or attempted extortion, and wire fraud, by: a) sending numerous letters containing threats of litigation, threats of economic harm, and negative consequences for Plaintiffs' business operations; b) traveling to New York from California to manufacture causes of action and evidence; c) manufacturing causes of action and

evidence at the SDNY Action Plaintiffs' karaoke establishments; d) filing the frivolous claims premised upon the 18 Dismissed Songs; e) making multiple false and misleading statements to U.S. Court; f) submitting multiple sworn Declarations, containing fraudulent statements, to U.S. Court via interstate wire; g) personally visiting, and making phone calls to, Plaintiffs' karaoke establishments, demanding payment of purported copyright licensing fees, threatening litigation, threatening Order suspending their business operations, and threatening the impoundment or destruction of their karaoke machines; and h) transmitting, or causing to be transmitted, the false and misleading statements through the media – the Korea Daily newspaper and radio channels – regarding the outcome of the SDNY Action.

419.    Even if some of the RICO Defendants did not agree to harm Plaintiffs specifically, the purpose of the acts they engaged in was to advance the overall objects of the conspiracy, and the harm to Plaintiffs was a reasonably foreseeable consequence of the RICO Defendants' actions.

420.    The RICO Defendants' conspiracy to commit substantive RICO violations described herein directly and proximately caused Plaintiffs' injury.

421.    But for the RICO Defendants' conspiracy to commit substantive RICO violations described herein, Plaintiffs would not have incurred legal costs in the amount of $456,181.75 in connection with the multiple dunning letters, personal visits, and phone calls spanning from March 23, 2017 until the present and in defending the frivolous claims premised upon the 18 Dismissed Songs.

422.    But for the RICO Defendants' violations of 18 U.S.C. § 1962(d), Plaintiffs would not have incurred legal costs in the amount of $456,181.75 in connection with the multiple dunning letters, personal visits, and phone calls spanning from March 23, 2017 until the present and in defending the frivolous premised upon the 18 Dismissed Songs.

423.    Had the RICO Defendants not conspired to engage in the pattern of racketeering activities described herein, Plaintiffs would not have incurred legal costs in the amount of $456,181.75 in connection with the multiple dunning letters, personal visits, and phone calls spanning from March 23, 2017 until the present and in defending the frivolous claims premised upon the 18 Dismissed Songs.

424.    Had the RICO Defendants not conspired to bring the frivolous claims premised upon the 18 Dismissed Songs of which the Enterprise never owned copyrights, Plaintiffs would not have incurred the defense costs in the amount of $456,181.75 in defending the frivolous claimed premised upon the 18 Dismissed Songs.

425.    Had the RICO Defendants not conspired to extort money from Plaintiffs, Plaintiffs would not have incurred the defense costs in the amount of $456,181.75 in connection with the multiple dunning letters, personal visits, and phone calls spanning from March 23, 2017 until the present and in defending the frivolous claims premised upon the 18 Dismissed Songs.

426.    Had the RICO Defendants not conspired to manufacture causes of action and evidence pertaining to the 18 Dismissed Songs for use in the SDNY Action, Plaintiffs would not have incurred the defense costs in the amount of $456,181.75 in defending the frivolous claims premised upon the 18 Dismissed Songs.

427.    Had the RICO Defendants not conspired to make the false and misleading statements in their sworn Declarations that the Enterprise owned exclusive copyrights to the 18 Dismissed Songs to U.S. Court, Plaintiffs would not have incurred the defense costs in the amount of $456,181.75 in defending the frivolous claims premised upon the 18 Dismissed Songs.

428.    Had the RICO Defendants not conspired to transmit, or cause to be transmitted, the false and misleading statements via interstate wire to U.S. Court, Plaintiffs would not have incurred

the defense costs in the amount of $456,181.75 in defending the frivolous claims premised upon the 18 Dismissed Songs.

429.    The unlawful actions of the RICO Defendants, and each of them, have directly, illegally, and proximately caused, and continue to cause, injury to Plaintiffs in their business and property by reason of the RICO Defendants' violations of 18 U.S.C. § 1962(d).

430.    The RICO Defendants' conduct was, at the very least, a "substantial factor" in causing damages to Plaintiffs in the form of legal defense costs incurred in defending the fraudulent claims premised upon the 18 Dismissed Songs, and this result was "reasonably foreseeable" by the RICO Defendants involved in the affairs of the Enterprise, as they all knew that the Enterprise did not possess copyright ownership of the 18 Dismissed Songs.

431.    The RICO Persons' conspiracy to commit substantive RICO violations in violation of 18 U.S.C. § 1962(d) led directly to Plaintiffs' injury.

432.    The injury to Plaintiffs was reasonably foreseeable or anticipated as a natural consequence of the RICO Persons' conduct and behavior described herein.

433.    As a direct, proximate, and reasonably foreseeable result of the RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property in the amount of $456,181.75.

434.    Plaintiffs seek an award of damages in compensation for, among other things, $456,181.75.

435.    Plaintiffs accordingly seek an award of three (3) times the damages they sustained, as well as punitive damages, and the recovery of reasonable attorneys' fees and costs, expenses, and disbursements incurred, and any other relief as authorized by statute.

## THIRD CAUSE OF ACTION
### (Fraudulent Misrepresentation)

436.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

437.    On March 19, 2019, Defendants knowingly and intentionally made false representations, in the Complaint filed in the SDNY Action, to the SDNY Action Plaintiffs that the Enterprise owned exclusive copyrights to the 18 Dismissed Songs.

438.    On March 19, 2019, Defendants knowingly and intentionally made false representations, in the Complaint filed in the SDNY Action, to the SDNY Action Plaintiffs that the Enterprise have obtained exclusive copyrights from all original authors of the 18 Dismissed Songs.

439.    Said knowing and intentional false representations were communicated to the SDNY Action Plaintiffs on April 16, 2019 for the first time when the Complaint was served upon the SDNY Action Plaintiffs.

440.    During Defendant Yoo's visits to the SDNY Action Plaintiffs' karaoke establishments on April 25, 2019, Defendant Yoo knowingly and intentionally made false representations to the SDNY Action Plaintiffs that the Enterprise owned exclusive copyrights to the 18 Dismissed Songs.

441.    During Defendant Yoo's visits to the Non-SDNY Action Plaintiffs' karaoke establishments on April 25, 2019, April 26, 2019, and April 27, 2019, Defendant Yoo knowingly and intentionally made false representations to the Non-SDNY Action Plaintiffs that the Enterprise owned exclusive copyrights to the 18 Dismissed Songs.

442.    Defendants knowingly and intentionally made a false representation that because the Enterprise owned exclusive copyrights to the 18 Dismissed Songs, Plaintiffs were required to pay copyright licensing fees on a monthly basis to the Enterprise.

443.    Defendants knew that said representations were false at the time they were made.

444.    Defendant made these false representations while knowing that their misrepresentations were materially false.

445.    Defendants made these misrepresentations with the intent to extort money from Plaintiffs.

446.    Defendants made these misrepresentations with the intent to defraud and trick Plaintiffs into paying the money to which Defendants were not entitled.

447.    Defendants made these representations for the purpose of inducing Plaintiffs to pay purported copyright licensing fees to Defendants.

448.    Despite the fact that Defendants knew said representations were false, Defendants made those representations to deceive Plaintiffs and coerce them into making monthly payments, disguised as copyright licensing fees, so that Defendants could continue to receive and benefit from the purported copyright licensing fees payments.

449.    Despite the fact that Defendants knew said representations were false, Defendants made those representations to deceive Plaintiffs and coerce them into settling the SDNY Action, so that Defendants could financially benefit themselves.

450.    The material misrepresentations have been reasonably and justifiably relied upon by Plaintiffs.

451.    Plaintiffs believed those representations to be true, acted in reliance upon them, and were deceived.  Plaintiffs materially changed their position in reliance on the representations made by Defendants by permanently deleting the 18 Dismissed Songs from their karaoke machines.

452.    Plaintiffs materially changed their position in reliance on the representations made by Defendants by contacting Taejin Media, a karaoke machine manufacturer and distributor,

headquartered in South Korea, and requesting that the 25 claimed songs, which included the 18 Dismissed Songs, be permanently deleted from the machines.

453.    Plaintiffs materially changed their position in reliance on the representations made by Defendants by ceasing to use the 18 Dismissed Songs for their karaoke businesses.

454.    Plaintiffs materially changed their position in reliance on the representations made by Defendants by forming the Association in their collective efforts to ascertain the songs to which the Enterprise claimed to own exclusive copyright.

455.    Plaintiffs materially changed their position in reliance on the representations made by Defendants by searching for and retaining an attorney to represent the SDNY Action Plaintiffs in the SDNY Action in response to the frivolous claims premised upon the 18 Dismissed Songs for over 4 years.

456.    Plaintiffs materially changed their position in reliance on the representations made by Defendants by expending a substantial amount of money in legal fees in responding to Defendants' claims premised upon the 18 Dismissed Songs, attempting to discover evidentiary materials supporting Defendants' claims premised upon the 18 Dismissed Songs, and otherwise defending the frivolous claims premised upon the 18 Dismissed Songs.

457.    There was an agreement among Defendants to defraud Plaintiffs and fraudulently induce them to pay money, disguised as copyright licensing fees, which would permit Defendants to receive the purported copyright licensing fees payments, and share these misbegotten funds through salaries, bonuses, and through other means.

458.    There was an agreement among Defendants to defraud Plaintiffs and fraudulently induce the SDNY Action Plaintiffs to settle the SDNY Action, which would permit Defendants to

receive the purported settlement payment, and share these misbegotten settlement funds through salaries, bonuses, and through other means.

459.    Defendants engaged in overt acts in furtherance of this agreement when they planned, organized, and participated in a pattern of racketeering activities described in this Complaint.

460.    Defendants acted in concert in fostering and promoting this fraudulent scheme in order to defraud Plaintiffs and cause injury to Plaintiffs, or Defendants knew that this injury was substantially certain to happen.

461.    As a direct, proximate, and reasonably foreseeable result of Defendants' intentional false representations and fraudulent inducement, Plaintiffs were injured and suffered significant losses including, but not limited to, funds expended for legal costs in the amount of $456,181.75 incurred in defending the fraudulent claims premised upon the 18 Dismissed Songs in the SDNY Action.

462.    Defendants have engaged in the malicious, willful, and fraudulent commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts, Plaintiffs are entitled to, and should be awarded, punitive damages against each of Defendants and the recovery of reasonable attorneys' fees and costs, expenses, disbursements incurred, and any other relief as the Court deems just and proper, based upon the extreme and outrageous conduct described herein.

## FOURTH CAUSE OF ACTION
### (Aiding and Abetting Fraud)

463.    Plaintiffs repeat, reiterate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs.

464.    Each of Defendants knew and/or recklessly disregarded that other Defendants were engaged in unlawful conduct.

465.    As alleged in great length above, a pattern of racketeering activities, as well as actual fraud, existed.

466.    Each of Defendants knew the existence of the fraud and ongoing racketeering activities.

467.    Each of Defendants provided substantial assistance to other Defendants by inducing Plaintiffs to expend money on the defense costs and other incidentals that went along with having to delete the 18 Dismissed Songs from Plaintiffs' karaoke machines.

468.    Each of Defendants affirmatively assisted, or by virtue of failing to act when requiring to do so, enabled the fraud to proceed.

469.    Each of Defendants shared in the proceeds or otherwise benefitted from their assistance.

470.    The conduct of each of Defendants was wanton, willful, intentional, malicious, and/or reckless.

471.    The actions of Defendants directly and proximately caused Plaintiffs' injury.

472.    As a direct and proximate result of Defendants' conduct, Plaintiffs were injured and suffered significant losses including, but not limited to, funds expended for legal costs in the amount of $456,181.75 incurred in defending the fraudulent claims premised upon the 18 Dismissed Songs and other incidentals that went along with having to delete the 18 Dismissed Songs from Plaintiffs' karaoke machines.

473.    Defendants have engaged in the malicious, willful, and fraudulent commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts, Plaintiffs are entitled to, and should be awarded, punitive damages against each of Defendants and the recovery

of reasonable attorneys' fees and costs, expenses, disbursements incurred, and any other relief as the Court deems just and proper, based upon the extreme and outrageous conduct described herein.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

A. On the First Cause of Action, a judgment awarding compensatory damages in the amount of $456,181.75, treble damages, punitive damages, reasonable attorneys' fees and costs, expenses, and disbursements, and any other relief that the Court deems just and proper and as authorized by statute;

B. On the Second Cause of Action, a judgment awarding compensatory damages in the amount of $456,181.75, treble damages, punitive damages, reasonable attorneys' fees and costs, expenses, and disbursements, and any other relief that the Court deems just and proper and as authorized by statute;

C. On the Third Cause of Action, a judgment awarding compensatory damages in the amount of $456,181.75, punitive damages, reasonable attorneys' fees and costs, expenses, and disbursements, and any other relief that the Court deems just and proper and as authorized by statute;

D. On the Fourth Cause of Action, a judgment awarding compensatory damages in the amount of $456,181.75, punitive damages, reasonable attorneys' fees and costs, expenses, and disbursements, and any other relief that the Court deems just and proper and as authorized by statute; and

E. Any other, further, and different relief as the Court deems just, proper, and equitable.

Dated: March 18, 2025
New York, New York

**AHNE & JI, LLP**

/s/ Younghoon Ji
By: Younghoon Ji, Esq.
*Attorneys for Plaintiffs*
45 East 34th Street, 5th Floor
New York, New York 10016
Tel.: (212) 594-1035
Email: yji@ahnejillp.com

To:    ELOHIM EPF USA, INC.
1199 Fairway Drive, Suite 111
City of Industry, CA 91789

CHONG YUN CHA a/k/a DAVID CHA
1199 Fairway Drive, Suite 111
City of Industry, CA 81789

NAM HYUN YOO
162-10 Crocheron Ave., 2nd Floor, Suite E
Flushing, NY 11358